## B. E. TAYLOR v. A. DESEVE.

### No. 6942.

1.   **Adoption of Minor.**—A verbal agreement between the father, the mother being dead, and another to the effect that the other should have the custody of the child does not constitute an adoption of the child.   No rights grew out of such agreement.

2.   **Same.—Custody and Support of Child.**—The adoption of a child, even under the statutes of this State, does not absolve the parent from liability for its support or deprive him of its custody.   The adoption only constitutes the child an heir of the person adopting.

3.   **Control of Minors — Probate Courts.** — Save in divorce suits the Probate Courts have the exclusive jurisdiction over the custody of infants through apprenticeship and guardianship proceedings.   Except as authorized by statute the parent can not make a contract with a third party by which he shall be exonerated from the care and support of his child.

4.   **Implied Promise.** — The father agreed with plaintiff by parol that he should have the infant child.   Plaintiff took the child believing he had adopted it, and within a year defendant took the child from plaintiff.   The plaintiff sued for its support. *Held*, that upon the revocation by the father of the agreement for the custody of the child the plaintiff could recover, notwithstanding his contract to keep it without charge made in his agreement to adopt it.

5.   **Gratuitous Services.**—When the consideration upon which one of the parties to a contract relied in tendering his services gratuitously is taken away by the party who has received the benefit of the services, the first party can not be bound by his original intention.

6.   **Contract Voidable Under the Statute of Frauds.**—While a contract for the adoption of a child would not be void under the statute of frauds, still the parent would be equally liable for the support of the child.   The party to such avoidable contract receiving the benefit of the services of another under it upon refusing to carry out his agreement may be compelled to pay for what he has received.

7. **Voluntary Surrender of Child.** — The testimony showed that the parties (man and wife) believing they had adopted an infant received it from its father, and that eleven months thereafter the father took the child; that by the use of force the taking could have been prevented. *Held,* that failing to resist the father by force was not evidence of consent to his taking his child. In such case it was not error to refuse to submit the issue of consent to the jury.

APPEAL from Bexar. Tried below before Hon. George H. Noonan. The opinion states the case.

*Otto Bergstrom* and *William Aubrey,* for appellant.—1. Upon the breach of a contract for the adoption of a child, the consideration of which is the present and future society and the future services of the child, the remedy is an action for damages sustained in the loss of such society and services, or a suit for specific performance.

2. In a suit for the reasonable value of services alleged to have been rendered the court should instruct the jury that they should find from the evidence in the cause what such reasonable value is, and it is error in the court to charge the jury to find a verdict in the premises for such amount as they believe the plaintiff is entitled to, without restricting them, as a basis for such belief, to the evidence in the cause.

3. When, upon a suit upon quantum meruit for value of services rendered, the evidence discloses an express contract under which no charge was to be made for such services, it is error for the court to charge the jury that they may find for plaintiff the reasonable value of such services.

4. Upon a rescission by common consent of a contract for services to be rendered in the care of a child whose society or services are agreed to be the compensation of the person rendering such services, neither party can sue the other as for a breach of such contract or upon a quantum meruit for the value of such services or society.

*John H. Copeland,* for appellee.

MARR, JUDGE, *Section A.*—Appellee brought suit April 24, 1886, in the Justice Court of Precinct No. 1, Bexar County, Texas, against appellant on the following account:

              "B. E. TAYLOR TO ADOLPH DESEVE, DR.

"To maintenance of child Annie Maud, daughter of said B. E. Taylor, from April 15, 1885, to March 30, 1886—11½ months—at $15.ℓ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $172 50"

Appellant pleaded nil indebitatus.

On the 24th day of June, 1886, appellee recovered judgment in the Justice Court for $160 and costs, from which judgment appellant appealed to the District Court of Bexar County. On the 19th day of

February, 1888, the cause coming on to be heard in the District Court before a jury resulted in a verdict for appellee for $100, and judgment in his favor for that amount and the costs of the Justice Court, the costs in the District Court being taxed against appellee. February 20, 1889, appellant filed his motion for a new trial, which was overruled by the court, whereupon appellant gave notice of appeal and appealed to this court.

We will give the main portion of appellee's testimony to more fully show the nature of his claim from his standpoint. He testified as follows: "My name is Adolph Deseve. I am the plaintiff in the above styled and numbered cause. About the 7th day of May, 1885, I called on Mr. Taylor, at my wife's solicitation, to ascertain if Mr. Taylor, the defendant, would give us his child Annie Maud for adoption, as my wife and I had no children and were anxious to have the child, Mr. Taylor's wife having died on the 6th of that month. Taylor said he would see about it and let me know. On the 10th of May, 1885, Mr. Taylor brought the child Annie Maud to my house and said he had concluded to give us the child for adoption. Some time thereafter I asked Mr. Taylor to give us papers to the effect that he had given us the child for adoption, so that he could never take it away from us again, and he answered that he would give us his word of honor that we should have the child and keep it for all time, and that papers were not necessary, as his word was as good as his bond. We took the child and kept it as our own constantly from and after the 11th or 12th day of May, 1885, up to and until the 30th day of March, 1886, fed, clothed, and cared for it as our own, and on the last mentioned date Mr. Taylor came and took the child away from us again, without paying us anything for the care of the child. At the time of receiving the child from Mr. Taylor we did not intend to charge him anything for the care, attention, or clothing of the child; neither did Mr. Taylor intend to pay us anything; but it was intended simply that we should adopt the child as our own and Mr. Taylor have nothing further to do with it. We simply expected to keep and raise the child in consideration of its society and future services."

The testimony also disclosed the fact that the child Maud was a "baby" when taken charge of by the plaintiff and his wife. The defendant moved the court below to strike out and exclude the testimony of the plaintiff as above set forth, "because (1) the evidence tended to prove a different contract from that sued on, the suit being for the care and maintenance of said child, and the evidence complained of showing an express contract for the adoption of said child, for the breach of which an action would alone lie for damages caused by the deprivation of the services and society of the child or for a specific performance; (2) the contract testified to contemplated more than one year, and was within the statute of frauds; (3) the evidence was irrelevant

and of a character tending to prejudice the minds of the jury against defendant.''

The court below denied the motion, and defendant excepted and assigns this action of the court as error. The same questions practically are presented by objections made to the charge of the court and to its action in giving certain instructions as requested by the plaintiff and in refusing others asked by the defendant to the effect that plaintiff could have only sued for the loss of the society and services of the child, and could not recover for its care and maintenance nor on a quantum meruit, etc. It will not, therefore, be necessary to consider all of the assignments of error separately or in the order presented.

1. If there had been a legal adoption of the child, binding upon the father, so that thereafter plaintiff could have kept the child without defendant's consent and against his will even, then it might be that the proper action for the deprivation of the plaintiff of the adopted child's society and services by the wrongful act of the father would be, as technically termed, per quod servitium amisit, and not on a quantum meruit, and for the maintenance of the child. In such case the plaintiff, being entitled to the care and custody of the child and to its services, would of course be bound to provide at his own expense for its support and maintenance, or at least could not look to the father under such circumstances for recompense. But no such case is here presented, and we are not required to determine that point. We are of the opinion that there was no legal adoption of the child Maud by the plaintiff. It was still subject to the father's control and he could legally reclaim it at any time, as he did do. According to the testimony on behalf of the plaintiff the defendant merely gave the plaintiff and his wife verbal permission to keep and rear the child. This was denied by the defendant. There was no writing between the parties or declaration in writing of the fact of adoption by the plaintiff as provided by law. Rev. Stats., art. 1. Had this been done by the plaintiff with strict legal formality, however, it would not have entitled him to the custody or services of the child. The only effect would have been to have made the child his heir at law, but not an inmate and constituent of his family. Even when thus adopted the relation between the parties would not under our statute have been the same as paternity and filiation. Echford v. Knox, 67 Texas, 204. The duty of supporting and maintaining his child is devolved by law upon the father, and he can not relegate this duty to any other person except as authorized by law. We have no statute regulating the adoption of children except the statute already quoted, and that provides only for the selection of an heir who is to inherit, after the death of the party adopting him as such, in the mode directed in the statute. Until there shall be further legislation the only mode of which we are aware whereby any person other than a parent can become entitled to the custody of a minor child is through the in-

strumentality of the County Court, which may on application appoint guardians of the persons of minors as well as of their estates, or bind them in apprenticeship. Rev. Stats., art. 18. It may well be doubted whether adoption as known to the civil law is recognized in this State except to the extent provided by our statutes before referred to, but even under that law, as we understand it, certain formalities were required which were not observed in the present instance. Bouv. Law Dic., "Adoption." The fact that the County Courts are invested by the Constitution and the laws with general control over the persons of minors, either for the purpose of selecting guardians of their persons or of binding them in apprenticeship, would indicate that the law makers intended that through this court alone (except in divorce cases) can any one other than a parent obtain the parental right to the custody and control of a minor or to its services. Statutes relating to guardians and apprentices. When the parents consent to the apprenticing of their child this must be done in the court and by a writing duly "signed, filed, and recorded." The master thus appointed becomes the guardian of the person of such minor and is entitled to his services Rev. Stats., arts. 29, 41. Except as may be authorized by statute the father can not by contract with a third party shirk or permanently abandon the duty imposed upon him by law "to protect, educate, and maintain" his own legitimate offspring. Schoul. Dam. Rel., 315, 343.

We think it is evident, therefore, that the plaintiff had acquired no irrevocable right to the custody of the child, and could not have sued the father for the loss of its services or society resulting from his act in reclaiming it. Sharkey v. McDermott, 16 Mo., 80. But it is said by the appellant that plaintiff admits that when this child was taken in the first instance he did not intend charging anything for its maintenance and support, and that a promise to pay upon the part of the defendant ought not, therefore, to be implied contrary to the intention of the parties. While it is very likely true that the plaintiff did not intend to make any charges for maintaining the child when it was received into his household, yet this was so, as we think, entirely because he thought he had adopted the child and would be allowed by the defendant to rear it as if it were in fact the child of himself and his wife, they being childless; otherwise he would have had no intention of receiving and would not have received it without charge. This is evident from the fact that he made a contract for compensation for the care and support of another child of the defendant also received by him at the same time he took charge of the child Maud. There being no legal adoption, plaintiff was not legally bound to provide support for the child without recompense. That duty devolved upon the father, who, if he did not induce plaintiff to take the child, most certainly did induce and cause the plaintiff to care for and maintain the child for the

time it remained with him.   Of this maintenance he received the full
benefit, and for that time was relieved of the expense and trouble of
caring for the child.   After having thus accepted the benefits of plaint-
iff's acts in pursuance of the original contract, he repudiated the same
and refused to make any recompense.   Had he not taken the child
away there would probably have been no claim of charges made for its
support.   While, therefore, it may be conceded to be a settled princi-
ple of law that a promise to pay will not be implied contrary to the in-
tention of the parties (Lippman v. Tittman, 31 Mo., 74), still we think
that this principle ought not to be applied except where both parties
to the contract act in good faith.   When the consideration upon which
one of the parties relied in tendering his services gratuitously is en-
tirely taken away from him by the other who has received the benefit
of the services, the first party can not be held to be bound by his orig-
inal intention though the other party had the legal right to put an end
to the contract; for then the agreement must be regarded as a mere
nudum factum from the beginning, and the acts of him who accepted
the services and repudiated the contract as a palpable fraud.   It would
seem almost preposterous to suppose that the plaintiff would have un-
dertaken to care for and attend to a baby of a stranger gratuitously
unless he expected to be allowed to adopt it and make it a permanent
inmate of his family, as was the desire of his wife.   We think under
the circumstances that the court below was justified in giving the fol-
lowing instructions as requested by the plaintiffs, though the second
one might not be correct as a general rule, viz.: "If a party by his acts
induces another to render services, and he avails himself of such ser-
vices, the law implies a contract on his part to pay what the services
are reasonably worth;" and "when one does for another what the other
should do, the law not only implies a previous request that the thing
should be done, but also a promise to make due compensation."   Trainer
v. Trumbull, 141 Mass., 527.

    The defendant does not deny in his testimony that he requested the
plaintiff and his wife to take care of his two children, though it ap-
pears that plaintiff applied to him in the first instance for permission
to adopt one of the children, Maud.   Defendant denies positively that
he ever gave such consent, but on the contrary swears that the plaint-
iff agreed with him to take care of the two children of his, Maud and
Jesse, during his absence in Europe, and that the amount agreed up-
on to be paid by him for both children was fixed at $10 per month and
no more.   This issue was submitted to the jury, who evidently did not
believe that this amount was intended for the care of both of the
children.   The evidence on behalf of plaintiff went to establish that
that much was agreed to be paid for Jesse alone.   It will thus be seen
that defendant himself admits that there was a contract that he should

pay for the support of Maud while she remained with the plaintiffs. This alone would have justified the court in submitting to the jury the issue upon express promise to make compensation and to what extent.

2. As will be seen, the defendant also relied upon the statute of frauds, claiming that the verbal contract could not be performed in one year. The contract was not within the statute, as it may or may not have been performed within one year. The child might have died during the first year. From what has already been said concerning the defendant's acceptance of the services of plaintiff and his wife bestowed upon the child of the defendant, as well as the repudiation of the contract by the defendant, it must appear, however, that this is a singular case in which to invoke that statute. It was enacted to prevent fraud, not to encourage or sanction its perpetration by shielding the wrongdoer. Although a contract may be voidable because within the statute, yet a party thereto who receives the benefit of the services of another rendered thereunder must, upon refusing to carry out the agreement, pay for what he has received. Sayles' Civ. Stats., art. 2464, note 2, et seq.

3. We do not believe there was any reversible error in the refusal of the court to instruct the jury, as requested by the defendant, to the effect that if plaintiff was willing for the defendant to reclaim his child and voluntarily consented thereto, they would find for the defendant. There was but slight, if any, evidence tending to show such state of the case. The circumstances and mode of reclaiming and taking possession of the child by the defendant show that he did not seek nor obtain the permission of the plaintiff or his wife to do so. It is evident that he was determined to reclaim the possession of the child, nolens volens the plaintiff. True, the latter admitted on cross-examination that he could have prevented the defendant from taking the child away by calling in the assistance of his brother, but this had reference to a resort to force as a preventive, and does not show voluntary consent to the act. Taking the strongest view of what the plaintiff testified to on this subject in favor of the defendant, it amounted to no more than this, that he was unwilling to give up the child, as was also his wife, yet he did not oppose the father when he reclaimed the child and did not insist upon retaining it against the determination of the father that he should not. This does not show that plaintiff voluntarily consented to the taking away of the child from his custody, or any mutual agreement that appellant should reclaim the child without making compensation to plaintiff. Under the circumstances, therefore, we do not think that the refusal of the court to allow this instruction worked any injury to the rights of the appellant.

4. It is further assigned as error that the verdict of the jury is against the evidence. We can not so hold. There is ample evidence to support the verdict of the jury on every issue, though there is a con-

flict of evidence on nearly every point.    Two juries have decided against the appellant, and we see no sufficient reason for disturbing the verdict of the last one.

We conclude that judgment should be affirmed.

*Affirmed.*

Adopted June 2, 1891.