BRIDGEWATER v. HOOKS et al.

(Court of Civil Appeals of Texas. Galveston. June 25, 1913. On Motion for Rehearing, Oct. 9, 1913.)

1. APPEAL AND ERROR (§ 265*)—RESERVATION OF GROUNDS OF REVIEW—NECESSITY OF EXCEPTIONS.

Cross-assignments of error filed by appellees attacking findings of the trial court to which they did not except in the court below could not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1461, 1536–1551; Dec. Dig. § 265.*]

2. WILLS (§ 58*)—CONTRACTS TO DEVISE OR BEQUEATH—VALIDITY.

A contract upon a valuable consideration that one of the parties will, at his death, leave property to the other is valid and enforceable.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. § 58.*]

3. WILLS (§ 59*) — CONTRACTS TO DEVISE OR BEQUEATH—CONSIDERATION.

While a parent has no property interest in a child that can be disposed of by contract and cannot by contract divest himself of his obligation to support and maintain such child, where a contract by a parent to surrender the possession, custody, and control of a child to a third person in consideration of the third person's agreement to care for him as his own and leave him all of his property at his death was fully performed by the parent and child, the third person's agreement was not unenforceable for want of consideration.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 166; Dec. Dig. § 59.*]

4. FRAUDS, STATUTE OF (§ 129*)—PART PERFORMANCE—AGREEMENTS TO DEVISE OR BEQUEATH.

Where a father, the sole surviving parent of his son, orally agreed with D. to surrender the control, possession, and custody of the son to D. in consideration that D. would take him, raise him as his own son, and leave him all of his property, real and personal, at his death, the contract was performed by the father, and the son bestowed upon D. the attention, affection, and obedience that a son usually gives to a father and performed services around D.'s home as needed without receiving any wages or money consideration therefor until the death of D., there was such performance of the contract as removed it from the operation of the statute of frauds, since while payment of the agreed consideration, coupled with the transfer of possession, is not sufficient to take a parol contract for the sale of land from the operation of the statute, without the making of any valuable improvements on the land, and payment of the consideration in personal services does not necessarily change the rule, a different rule applies where the services are of such character that their value cannot be, and is not intended to be, measured by any pecuniary standard.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

5. WILLS (§ 67*) — CONTRACTS TO DEVISE OR BEQUEATH—RIGHTS ON BREACH.

The rights of one to whom an intestate had agreed to leave all of his property upon his death was subject to the right of administration upon the estate if necessity therefor existed, and hence he was not entitled to possession of the intestate's property as against the administrator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 175–177; Dec. Dig. § 67.*]

## On Motion for Rehearing.

6. FRAUDS, STATUTE OF (§ 129*)—PART PERFORMANCE—DELIVERY OF POSSESSION.

The rule that oral contracts for the sale of land are unenforceable, no matter what equities exist in favor of the vendee, unless he has been placed in possession of the land by the vendor, had no application to an agreement to leave all of a party's property to another at his death, since it did not refer to any specific property, and from its very nature and purpose could not be evidenced by delivery of possession, as it was not certain that any land would come within its operation.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

7. COURTS (§ 107*) — RULES OF DECISION — PRECEDENTS.

The individual views of the member of a court delivering an opinion are not binding as stare decisis upon any other court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 360; Dec. Dig. § 107.*]

8. CONTRACTS (§ 187*)—CONTRACTS TO DEVISE OR BEQUEATH—BY WHOM ENFORCEABLE.

An agreement between a father and a third person by which the third person agreed to take a child, raise it as his own, and leave it all of his property at his death was not unenforceable by the child, even though he had no knowledge of its terms or existence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 798–807; Dec. Dig. § 187.*]

9. APPEAL AND ERROR (§ 1175*)—REVERSAL—RENDERING FINAL JUDGMENT.

That defendants did not introduce any of the witnesses who testified on the trial, and that the testimony for plaintiff was in the main uncontradicted, did not indicate that the facts were not fully developed, or make it improper to render judgment for plaintiff upon the reversal of a judgment for defendants.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

10. APPEAL AND ERROR (§ 1175*)—REVERSAL —RENDERING FINAL JUDGMENT.

Under Rev. Civ. St. 1911, art. 1626, providing that when a judgment shall be reversed the Court of Civil Appeals shall render such judgment as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, or where the damage to be assessed or the matter to be decreed is uncertain, in which cases the cause shall be remanded for a new trial, where no ruling of the trial court misled defendants as to the necessity of offering evidence, the whole case was submitted to the court on the facts and law, and a general judgment rendered for defendants, but upon the facts found plaintiff was entitled to judgment, and there was nothing to suggest that the facts were not fully developed, or that it was necessary that any matter of fact should be ascertained, a new trial would not be granted to enable defendants to procure evidence contradictory of that introduced by plaintiff, no excuse for the failure to produce which on the first trial was shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by Bob Bridgewater against H. A. Hooks, administrator, and others. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Jas. A. Harrison, of Beaumont, J. L. Manry and S. H. German, both of Livingston, and Ralph Durham and W. D. Gordon, both of Beaumont, for appellant. Singleton & Nall, of Kountze, and Smith, Crawford & Sonfield, of Beaumont, for appellees.

PLEASANTS, C. J. This suit was brought by the appellant against the appellee H. A. Hooks, administrator of the estate of Jno. W. Davis, deceased, and the heirs at law of said Davis, to recover all of the property of said estate. The material allegations of the petition are as follows: "That heretofore, on or about the year 1895, the plaintiff, who was then about nine years of age, was in the possession, custody, and control of and living with his father, S. A. M. Bridgewater, when John W. Davis, a citizen of Hardin county, Tex., who, desiring to obtain the care, custody, and society of plaintiff, and desiring to take and raise the plaintiff as his son, made and entered into a contract with the said father of plaintiff which was substantially as follows, to wit: That on or about the said year 1895, the said father, S. A. M. Bridgewater, contracted and agreed with the said John W. Davis to surrender said plaintiff, and surrender the possession, custody, and control of plaintiff, to the said John W. Davis, and in consideration thereof the said John W. Davis contracted and agreed to take and receive and raise plaintiff, and to give the plaintiff the care, attention, and rights of a son, and further agreed in consideration thereof to make plaintiff his heir and leave to him all of his, the said John W. Davis', property at his death. That at the time said

agreement and contract was made the plaintiff's mother was dead, and said S. A. M. Bridgewater was his sole surviving parent. That pursuant to the terms of said agreement the said S. A. M. Bridgewater surrendered and delivered the plaintiff to the said John W. Davis, and never thereafter exercised or demanded any care, custody, control, or possession of the plaintiff; but all such care, custody, control, and possession of the plaintiff was vested in and exercised by the said John W. Davis. That at the time of the surrender of plaintiff, as aforesaid, he was a child of about nine years of age, and plaintiff from said date never lived with his father, but lived with said John W. Davis, gave to him the devotion, filial obedience and assistance that a son usually gives to a father, and said John W. Davis gave to the plaintiff the care, attention, and devotion that a father usually gives to his son, and said plaintiff was under the full control and direction of the said John W. Davis. That after the surrender of plaintiff as aforesaid, the said S. A. M. Bridgewater never had or demanded the possession and custody of the plaintiff, and never exercised any control over him, and never demanded any of the earnings of the plaintiff, but strictly in all things complied with said agreement up to his death, which occurred in the year ——. That plaintiff was informed of said contract and agreement by both said Davis and Bridgewater, and ratified the same and reaffirmed said contract with the said John W. Davis, and in all things complied with the same up to the death of said John W. Davis. That said Davis treated the plaintiff as his son and heir, and frequently told the plaintiff that he was his heir and would get all of his property when he died, and the plaintiff was led to believe, and did believe, that said Davis would leave to him all of his property when he died. That at the time of the execution of said contract, and during all of the period of time that the plaintiff lived with the said John W. Davis, as aforesaid, it was never intended by the plaintiff or the said father or the said John W. Davis that plaintiff's services, changed filial relations and assistance and devotion to the said John W. Davis were to be compensated for, or measured by, any pecuniary standard, but on the contrary, it was never intended to be so measured, but plaintiff was to be rewarded only in the manner provided in said agreement, to wit, that the said Davis should and would leave to the plaintiff at his death all the property that he then owned. That the said John W. Davis died intestate in Hardin county, Tex., about August 15, 1911. That if he left a will such fact is unknown to plaintiff, and defendants received and took possession of all his papers and effects, and have not produced or offered to probate any will of said deceased. That said John W. Davis was a single man and was never mar-

ried, and left no kin or relations within the state of Texas, so far as known to plaintiff." It is further alleged that appellee H. A. Hooks has been appointed administrator, and is in possession of the property of the estate of said Davis, and the other defendants are the heirs at law of said Davis and claim to own the property as such heirs. A list of the property as far as known to the plaintiff is set out in the petition, and plaintiff prays judgment against the defendants "enforcing said contract and agreement, and that title to all the property, both real and personal, owned by the said John W. Davis at the time of his death be vested in plaintiff, and that plaintiff have and recover of and from the defendants the title and possession to all of said property." The defendants answered by general demurrer and general denial, and specially denied that plaintiff performed his part of said alleged contract. They further pleaded "that if any such contract existed as pleaded by the plaintiff, the same was not in writing in whole or in part, and the same is in contravention of the statute of frauds of this state in that it was a contract not to be performed within one year, and it also appears that the same was for the sale and transfer of real estate or the disposition thereof, and is therefore void." The trial in the court below without a jury resulted in a judgment in favor of defendants.

We adopt as our fact conclusions the following findings of fact, which were filed by the trial judge at the request of appellant:

"First. I find that the contract was made and executed between Jno. W. Davis, deceased, and S. A. M. Bridgewater, the father of plaintiff, as set out in plaintiff's petition, and that the same was not in writing, but was a parol contract, and that said contract was fully established by the evidence.

"Second. I find as a fact that plaintiff, Bob Bridgewater, and his father, S. A. M. Bridgewater, commonly called Tom Bridgewater, substantially carried out and performed said contract in accordance with its terms, and that John W. Davis performed same in every respect, except that he failed to leave plaintiff his property at his death, and in this connection I find that John W. Davis failed to leave any or all of his property to plaintiff, and died intestate.

"Third. I find that John W. Davis was a single man, having never been married, and had no relations or kin in the state of Texas.

"Fourth. I find that said John W. Davis left an estate, consisting of both personal and real property, which, under agreement of counsel, may and will be set out and described in the statement of facts so far as now discovered, and that said estate may own other property not known to any of the parties to this suit.

"Fifth. I find that S. A. M. Bridgewater and John W. Davis, deceased, entered into a verbal contract in the spring of 1895, in Jefferson county, Tex., wherein said Bridgewater agreed to surrender to said Davis his son, Bob Bridgewater, and the control, possession and custody of said Bob Bridgewater, in consideration that the said John W. Davis would take the plaintiff, raise him as his own son, and leave to plaintiff all his, the said John W. Davis', property at his death; that pursuant to said contract said Davis received plaintiff into his custody when plaintiff was 9 years of age, and said S. A. M. Bridgewater never thereafter had possession of plaintiff, or exercised any custody or control over him, but all such was vested in and exercised by the said John W. Davis.

"I find that the plaintiff always bestowed the attention, affection, and obedience that a son usually gives to a father, and performed chores and services around the home place as needed.

"That plaintiff received no wages or money consideration for his services.

"I find that plaintiff performed said contract substantially to the death of John W. Davis in the year 1911.

"Sixth. That plaintiff's mother died in the year 1891, and his father died in the year 1895."

Appellees filed in the court below an exception to the finding of the court that the contract alleged by plaintiff was substantially complied with, and, by cross-assignments presented in this court, attack said finding on the ground that the evidence fails to show such substantial compliance with the contract, but, on the contrary establishes that the alleged contract was not performed by him, and said finding is so against the great weight and preponderance of the evidence as to be manifestly wrong.

Another cross-assignment presented by appellees attacks the finding that the plaintiff always gave the deceased the affection and obedience that a son usually gives a father, on the ground that said finding is against the great weight and preponderance of the evidence, and another assails, as against the great weight and preponderance of the evidence, the finding that the execution of the alleged contract between plaintiff's father and the deceased was fully established by the evidence.

[1] Appellees having only excepted in the court below to the finding that plaintiff had substantially complied with the contract as alleged in his petition, a cross-assignment attacking other findings of fact of the trial court cannot be considered. Drake v. Davidson, 28 Tex. Civ. App. 184, 66 S. W. 889; Buster v. Warren, 35 Tex. Civ. App. 644, 80 S. W. 1063; Bank v. Improvement Co., 128 S. W. 436. We think, however, the evidence is sufficient to sustain all of the fact findings of the trial court, and for that reason none of the cross-assignments should be sustained if all should be considered.

The questions of law presented by the record are: First, whether without regard to

the statute of frauds the contract between the deceased and plaintiff was valid and inured to the benefit of plaintiff and can be enforced by him; and, second, whether the enforcement of said contract by plaintiff would contravene the statute of frauds.

[2] Appellees do not contend that a contract between two persons upon a valuable consideration that one will, at his death, leave property to the other is unenforceable, where not prohibited by statute. That such a contract is valid and enforceable is established by the great weight of authority in England and America, and by the decisions of our Supreme Court. Jordan v. Abney, 97 Tex. 296, 78 S. W. 486.

[3] The contention of appellees is that the contract in this case is unenforceable because the agreement of appellant's father to divest himself of the custody and control of his child could not have been. enforced by the deceased, and therefore the agreement of the deceased to leave his property to appellant was without consideration. The cases of Legate v. Legate, 87 Tex. 248, 28 S. W. 281, Taylor v. Deseve, 81 Tex. 246, 16 S. W. 1008, Parker v. Wiggins, 86 S. W. 788, and State v. Deaton, 93 Tex. 243, 54 S. W. 901, cited by appellees in support of this contention, do not hold that the surrender by a parent of his right to the control and custody of his child would not be a valid consideration for a contract made for the benefit of the child, and which had been fully performed both by the parent and the child. The extent of the holding in these cases is that the parent cannot, by a contract of this kind, divest himself of the obligations resting upon him of supporting and maintaining his child; that the parent has no property interest in the child that can be disposed of by contract, and in this sense neither the child nor its custody can be the subject-matter of a contract, and that in determining the question of the custody and control of the child, as between the parties to a contract of this kind, the court will disregard such contract, and look only to the best interest and welfare of the child.

In the case of Jordan v. Abney, before cited, our Supreme Court expressly holds that a contract similar to the one in this case when performed by the parent and child 'is binding upon the other party to the contract and entitled the child to the property which such party had agreed to leave it at his death. In that case the statute of frauds was not pleaded, and the court did not determine the question of whether the performance of the contract by the plaintiff rendered the statute inapplicable. Upon this question we have not found any direct authority in this state, but the authorities from other states in support of appellant's contention that the statute of frauds cannot be invoked to defeat his right to an enforcement of the contract are abundant.

[4] It is the settled rule in this state that the payment of the agreed consideration, coupled with the transfer of possession, is not sufficient to take a parol contract for the sale of land from the operation of the statute of frauds, but in addition to such payment and possession, to entitle the purchaser to the enforcement of such contract, he must, in reliance upon the verbal contract to convey, have made valuable improvements on the land. Lodge v. Leaverton, 42 Tex. 18. The fact that the consideration was paid for in personal services would not necessarily change this rule. Terry v. Craft, 87 S. W. 844. Whether the consideration was paid in money or in personal services, where the services performed were such that they could be adequately compensated in money, it would not operate as a fraud upon the purchaser to deny him specific performance of the contract, because he has his remedy to recover the money paid or the value of the services rendered. But a different rule applies when the services rendered are of such character that their value cannot be computed in money and it is evident that the parties to the contract did not suppose or intend that they could or would be measured by any pecuniary standard. In such case the purchaser cannot be placed in the position he was before he performed his part of the contract. It being impossible to adequately compensate him in money, to deny him the right to specific performance on the ground that the contract contravenes the statute of frauds would be to make that statute, the purpose of which is the prevention of frauds, an instrument of fraud. Courts of equity have always protested against such subversion of the statute.

On page 673, vol. 36, Cyc., it is said: "Certain kinds of service of very personal nature have been recognized by a clear majority of the American cases as a sufficient act of part performance, unaided by possession or other act on plaintiff's part. Where the services rendered are of such peculiar character that it is impossible to measure their value by any pecuniary standard, and where it is evident the parties did not intend to measure them by any such standard, it is impossible adequately to compensate the party performing the services except by decree for specific performance." Under this section are cited a number of cases from each of the following states, and most of same involved a verbal contract for the conveyance or devise of real property: California, Illinois, Iowa, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, Ohio, South Dakota, Utah, West Virginia, and United States courts. On page 674 it is said: "Another frequent type of contract is found in an informal agreement with the parents of a child to adopt the child and make it heir of the promisor or to give it a child's portion of the promisor's estate. The total change of po-

sition on the part of the child, and its natural parents, the assumption of the filial relation to the adopting parent, and the rendering of such services and duties of affection as naturally flow from that relation, present a case where the recovery of compensation for the pecuniary value of the services would be an utterly inadequate remedy." As sustaining the text a large number of cases are cited from the following states: California, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, New Jersey, South Dakota.

In the case of Weeks v. Lund, 69 N. H. 78, 45 Atl. 249, the court says: "In the case of a contract under which the relation of parent and child is assumed, under the agreement that the child shall receive all of the property of the other at death, the consideration of the contract is not so much the personal service of the child as it is the assumption of the filial relation. In such case it may be argued with great force that the value of that relation to the recipient of such services as naturally flow therefrom is not susceptible of measurement in money. The fact that the consideration for such services and the assumption of such relation is of all the property remaining at death, naturally an undetermined, an indefinite amount, may also authorize the inference that the parties did not intend or expect remuneration for the services rendered according to their pecuniary value."

In Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140, speaking of a similar contract, it is said: "The obligations of such a contract are mutual, and the peculiarities of it are such as to emphasize the right of him who has faithfully performed his part of it to that portion stipulated by the other party. It is impossible to estimate by any pecuniary standard the value to the party receiving a child, nor is there ever any design of so measuring the service and solace bestowed. The nature of the contract necessarily precludes all thought of returning the consideration, and after the mother has yielded the possession of her child, with all that this means, and it has lived until majority as a dutiful and loving son or daughter with those who have promised to cherish him or her as their own, and that he or she shall share their estate, it is beyond the power of the adoptive parents, or the courts, to place the mother or the child in the situation in which they were before the agreement was entered into. There is no such thing, in cases like this, as placing the parties in statu quo, and the remedy must be by specifically enforcing the contract, or the denial of rights which have been fully earned, and in good conscience and justice ought to be enforced."

The Supreme Court of Nebraska, in the case of Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788, 25 L. R. A. 207, 43 Am. St. Rep. 685, in a strong and well-considered opinion in which many of the cases supporting the doctrine above announced are cited and discussed, reaches the conclusion that the weight of authority and reason preponderate in favor of the proposition that a contract of this kind which has been performed by the child is relieved from the operation of the statute of frauds, and that the child can sue upon and enforce the contract made for it by its parent.

The following authorities also sustain the doctrine above announced: Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107, 60 Am. Rep. 270; Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L. R. A. 427, 74 Am. St. Rep. 491; Healey v. Simpson, 113 Mo. 340, 20 S. W. 881.

In the case of Svanburg v. Fosseen, supra, the court makes the following quotation from Pomeroy on Contracts (2d Ed.) page 161: "But if the services are of such peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before or be compensated by any recovery of legal damages. Under these circumstances the rendition of the services, or the procuring them to be rendered, is a part performance of the verbal agreement, and the case is quite analogous to those in which outlays are made for improvements by a vendee or lessee under a parol contract."

If this analogy exists, and we think it clearly does, it does not conflict with the doctrine announced in the case of Lodge v. Leaverton, supra, and the many cases in this state which follow that decision, to hold that the performance by appellant of the contract upon which this suit is brought removes said contract from the operation of the statute of frauds, but such holding is in entire accord with the principle upon which the decisions in said cases rest. We think upon the facts found by the trial court judgment should have been rendered in favor of the appellant.

[5] The title of appellant to the property of the estate of the deceased is, of course, subject to the right of administration upon said estate if necessity for such administration exists. Upon the record before us appellant does not show himself entitled to the right of possession of said estate as against the administrator.

The judgment of the court below will be reversed, and judgment here rendered in favor of appellant against all of the appellees, establishing his right and title to all of the property, real and personal, belonging to the said estate, subject to the right of the appellee Hooks to administer said estate under the orders of the county court of Har-

din county in accordance with the law of this state governing such administration.

Reversed and rendered.

### On Motion for Rehearing.

[6] Appellees in a motion for rehearing, supported by an able written argument, very earnestly contend that the contract upon which appellant's suit is based is in contravention of the statute of frauds. The main ground of this contention is that under the decisions of our Supreme Court no oral contract for the sale of land is enforceable, it matters not what equities may be shown in favor of the vendee, unless he is shown to have been placed in possession of the land by the vendor. That this is the general rule in this state in regard to verbal sales or gifts of land is well settled. Wooldridge v. Hancock, 70 Tex. 18, 6 S. W. 818; Bradley v. Owsley, 74 Tex. 69, 11 S. W. 1052.

[7] In all of the cases, however, in which this rule is laid down the contract was one of sale or gift of a specific tract of land, in which delivery of possession by the grantor was not an impossible or unreasonable requirement as evidence of the sale or gift. The courts in announcing this rule did not have in mind a contract like the one in this case, which does not refer to any specific property, and from its very nature and purpose could not be evidenced by delivery of possession. The present enforcement of this contract after its full performance by the appellant will result in the transfer of title to land, but at the time the contract was made and at no time prior to the death of Davis was it certain that any land would come within its operation, and the rule as to necessity for delivery of possession is not applicable. The statement of our Supreme Court, in some of the opinions referred to, that the court would not be inclined to extend the grounds upon which equity would enforce an oral contract for the sale of land is but the individual views of the member of the court delivering the opinion, and not binding as stare decisis upon any other court.

[8] It is further contended that because appellant is not shown to have been informed of the existence of the contract made for him by his father, and his performance of the obligations imposed upon him by the contract not having been with reference thereto, no such equities in his favor arose from such performance as would entitle him to an enforcement of the contract. We are not prepared to say that the finding of the court that appellant performed the contract, or his part, does not necessarily include the finding that appellant was informed of the existence of the contract, but we do not think it material whether or not he knew of the existence of the contract. The contract was made by his father for appellant's benefit, and if performed by appellant, he is entitled to the consideration promised by the contract, regardless of whether or not he knew of its terms or existence. This was the holding in the case of Kofka v. Rosicky, cited in the main opinion. We adhere to the conclusion expressed in our main opinion that the contract is not within the statute of frauds, and in equity and good conscience should be enforced.

[9] Appellees further contend that we erred in rendering judgment for appellant, even if our conclusion that the contract is enforceable is sound, but should have remanded the cause for a new trial. There is nothing in the record which suggests that the facts were not fully developed upon the trial. It is fairly inferable from the record that appellees did not introduce any of the witnesses who testified on the trial, and the testimony in the record is in the main uncontradicted, but this does not indicate that the facts were not fully developed.

[10] Appellees state in their motion for rehearing that they confidently hope that upon another trial they will be able to produce testimony showing that the contract sued on was not in fact made, and that if it was made appellant did not perform its obligations. This is, in effect, asking this court to remand the cause for another trial to give appellees an opportunity to procure and introduce evidence contradicting the testimony introduced by appellant when if any such evidence exists the record offers no excuse for appellees' failure to introduce it on the last trial. There was no ruling of the trial court, on exceptions or otherwise, by which appellees were misled as to the necessity of offering any evidence at their command material to the fact issues presented by the pleading. The whole case was submitted to the court on the facts and law, and a general judgment rendered in favor of appellees. Having reached the conclusion that upon the facts found by the trial judge the appellant was under the law entitled to a judgment in his favor, and there being nothing in the record to suggest that the facts were not fully developed, and no matter of fact being necessary to be ascertained to enable us to render a proper judgment, we felt compelled, under article 1626 of the Revised Statutes, to render judgment for appellant, and we do not feel authorized by anything presented in the motion for rehearing to set aside that judgment.

The motion for rehearing is overruled.