**NELSON v. WILSON et al.**

No. 4968.

Court of Civil Appeals of Texas. Texarkana.

Oct. 8, 1936.

Rehearing Denied Oct. 15, 1936.

Edwin M. Fulton, of Gilmer, for plaintiff in error.

Milton Greer Mell, of Gilmer, for defendants in error.

JOHNSON, Chief Justice.

Plaintiff in error, T. J. Nelson, filed this suit in trespass to try title against defendants in error, Mrs. Dollie Wilson, a feme sole, Johnnie Bagley, and Albert Goodson, to recover 52.6 acres of a 71-acre tract of land, a part of the Chas. D. Davenport H. R. survey in Upshur county.

Mrs. Dollie Wilson pleaded not guilty, the statute of ten years' limitation, and filed a cross-action, making Grover C. Bagley a party to the suit, asking judgment against T. J. Nelson and Grover C. Bagley for the entire 71-acre tract. It is agreed that the 71-acre tract was originally the separate property of Grover C. Bagley. He is the common source of title of plaintiff in error, T. J. Nelson, and of the defendant in error, Mrs. Dollie Wilson, who are the only actual contestants to this appeal.

Mrs. Wilson by her pleadings claims the land under an alleged verbal sale or gift in 1919 from Grover C. Bagley to her and her husband, Wiley Wilson, who died intestate and without issue November 28, 1928. Which verbal sale or gift was claimed to have been accompanied by delivery of possession, subsequent continuous occupancy, payment of consideration, and the making of valuable and permanent improvements on the land, with the knowledge and consent of Grover C. Bagley.

Plaintiff in error, T. J. Nelson, by his pleadings claims the 52.6 acres described of the 71-acre tract by virtue of certain deeds of conveyance from Grover C. Bagley and two of his children, executed in 1932. He also contends that the transaction by virtue of which Mrs. Dollie Wilson claims title is against public policy and void in that it involved a transfer of the custody of the minor children of Grover C. Bagley to her; and that Mrs. Dollie Wilson is estopped as a matter of law to claim title to the land, by virtue of facts which will hereinafter be stated.

Grover C. Bagley was living on the land, with his family, farming it, at the time of the death of his wife, Mrs. Venie Bagley, in 1918. Mrs. Venie Bagley was survived by her husband, Grover C. Bagley, and their five children, two boys, ages three and nine years, and three girls, six, seven, and ten years. Shortly after the death of Mrs. Bagley two of the girls contracted pneumonia and were taken to the home of Mrs. Wilson to be cared for. Mrs. Wilson was a sister of Mrs. Bagley, deceased. The two girls continued to live with the Wilsons after they recovered from the illness. Mr. Bagley testified that he got his mother-in-law to come and live with him and that "she stayed there with us 'till a little disturbance got tangled up and then she got up and left me and the kids there." The following spring, 1919, the younger boy became sick. Three of the children, including the younger boy, were then at the home of their aunt, Mrs. George Oxford, another sister of Mrs. Bagley, deceased. Mr. Bagley was cultivating his crop. The children would not stay at home unless he was at the house

with them. At the request of Mr. Bagley, Mr. and Mrs. Wilson agreed to take all the children into their home to care for, maintain and rear them, which they did—the younger boy lacking only about one month of being twenty-one years of age at the time of this trial. Shortly after the last three children were taken to the home of Mr. and Mrs. Wilson, about the first of the year 1920, Mr. Bagley delivered possession of the 71-acre tract of land to the Wilsons, and continuously since which time the Wilsons have occupied and farmed it, either by themselves or through their tenants. During which time the Wilsons built a new dwelling house upon the land, using some lumber from the old house and some new lumber, as well as making other valuable and permanent improvements on the land. The deed which Grover C. Bagley held to the land was delivered to Mrs. Wilson, but no deed of conveyance was executed to her by Mr. Bagley.

On trial of the case it was the contention of Mrs. Wilson that Grover C. Bagley, prompted by the agreement of herself and her husband to take care of and rear the children, he then gave Mrs. Wilson the land. It was the contention of Mr. Bagley that he only gave her the use of the land to care for and rear the children, and that she should pay the taxes thereon.

In response to special issues submitted the jury found:

(1) That Grover C. Bagley, about cotton-chopping time in 1919, gave the land to Dollie Wilson and her husband as their own, in consideration of their then agreeing to take, rear, and care for his children.

(2) That Dollie Wilson and husband, after such gift, took control and possession of the land with the knowledge and consent of Grover C. Bagley.

(3) That thereafter Dollie Wilson and her husband, in reliance upon such gift, and with the knowledge and consent of Grover C. Bagley, made valuable and permanent improvements upon the land.

(4) That Dollie Wilson by her acts and conduct with reference to the land, or the title thereto, at or prior to the time T. J. Nelson purchased from Grover C. Bagley and others, did not induce T. J. Nelson to understand and believe that she did not claim to own the land.

Judgment was rendered that T. J. Nelson take nothing by reason of his suit for the 52.6 acres of the 71-acre tract, and that Dollie Wilson recover of T. J. Nelson and Grover C. Bagley the entire 71-acre tract. From this judgment T. J. Nelson only has prosecuted a writ of error.

Plaintiff in error has filed four assignments of error, each complaining of the action of the trial court in refusing to grant his motion for an instructed verdict: (1) Because the evidence is insufficient to show a parol sale or gift of the land; (2) because there is no testimony of any probative force sufficient to show a parol sale or gift of the land; (3) because the uncontradicted evidence shows that Dollie Wilson is estopped as a matter of law from maintaining her cross-action for the land; (4) because the transaction whereby Grover C. Bagley gave Dollie Wilson and her husband the land in consideration to take, care for, and rear his children is void as against public policy.

Plaintiff in error has presented eleven propositions, none of which make any reference to the assignments upon which they are based, and some of which we do not think are germane to any of the assignments. So, in disposing of the matters presented by the appeal, we shall follow the order of the assignments of error as above set out.

Assignments of error 1 and 2 as above shown, being based alone upon the action of the trial court in refusing the motion of plaintiff in error for an instructed verdict, do not raise, as they attempt to do, the question of the sufficiency of the evidence to support the finding of the jury complained of, but only raise the question of law—as was the office of such motion before the trial court—as to whether or not there is any evidence to support such findings; and this court is not, under such assignments, authorized to decide the question of the sufficiency of the evidence. Swanson v. Holt, 97 S.W. (2d) 285, opinion by Judge Hall of this court; Ochoa v. Winerich Motor Sales Co. (Tex.Com.App.) 94 S.W.(2d) 416, 421, from which we quote: "Under the assignment that the court erred in refusing to instruct the jury to return a verdict for the motor sales company, which was in effect the same as an assignment that there

was no evidence to support the jury's finding, the Court of Civil Appeals [58 S.W.(2d) 193] had no authority to decide the question of the sufficiency of the evidence. Hall Music Co. v. Robertson, 117 Tex. 261, 1 S.W.(2d) 857."

In response to the question raised by assignments 1 and 2 "that there is no evidence to show a parol sale or gift of the land," referable to the findings of the jury, above stated, in answer to special issue No. 1, we have read the statement of facts and find that the contention of plaintiff in error cannot be sustained. Mrs. Wilson testified, in substance, that upon her agreement, made with the consent of her husband, to take and rear the children, Mr. Bagley gave her the land "as her own." George Oxford, Roy Bagley (son of Grover C. Bagley), Albert Goodson, Johnnie Bagley (son of Grover C. Bagley), and Francis Worth, testified to having heard Grover C. Bagley make statements in substance as testified to by Mrs. Wilson, and that he did not own the land; that he had given it to Dollie and Wiley. This testimony is disputed by Grover C. Bagley. His testimony is to the effect that he only gave the Wilsons the use of the land if they would "raise the children and pay the taxes." From this testimony we find that the verdict complained of is not without support in the evidence, and that the court did not err in refusing the motion for instructed verdict.

By his third assignment plaintiff in error contends that the court erred in refusing to direct a verdict in his favor because, it is contended, that Mrs. Wilson was estopped from claiming title to the land by reason of her silence, in failing to notify plaintiff in error prior to his purchase that she claimed the land. It is undisputed in the evidence that Mrs. Wilson was in exclusive possession and control of the land, living on it at the time plaintiff in error purchased. The 71-acre tract was inclosed under one fence, and a cross-fence of irregular course separated the pasture from the farm land. Plaintiff in error lived within one-half or three-quarters of a mile of the land. He admits in his testimony that he knew that Mrs. Wilson was living on the land at the time he purchased it and that he made no inquiry of her. He made no effort to find out whether or not she claimed the land. He does not in his testimony claim to have relied upon, or to have been misled, by the silence of, or anything said or done, by Mrs. Wilson. The record is absent of any facts or circumstances which would call upon Mrs. Wilson to speak concerning her claim of title to the land. The jury found that Dollie Wilson by her acts and conduct with reference to the land or the title thereto at or prior to the time T. J. Nelson purchased from Grover C. Bagley and others did not induce T. J. Nelson to understand and believe that she did not claim to own the land.

"One material element of an estoppel is that the party claiming it must have been misled by the representations or conduct of the opposite party to change his position for the worse." 17 Tex.Jur. 145, § 15. The assignment is overruled.

The fourth assignment asserts that the court erred in refusing to direct a verdict in favor of plaintiff in error, because, it is contended, the transaction under which Mrs. Wilson claims to have acquired title to the land, whether it be considered a verbal sale or "gift," is void, as against public policy, in that it involved a transfer of the custody of the minor children of Grover C. Bagley. In support of this contention, plaintiff in error relies upon the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1118, 15 A.L.R. 216. That is a well-known case, hence we do not deem it necessary to here restate the facts to which the sound principles of law therein stated were applied. As having reference to the issue raised by the assignment of plaintiff in error now under consideration, Hooks v. Bridgewater holds, as applicable to the facts in that case presented, that "a contract in which a parent in effect barters his child away for a property return" is against public policy and not enforceable. But such are not the facts before us, nor do we think that the principles of law announced in Hooks v. Bridgewater are applicable to plaintiff in error's case.

It is here noted that there is present in this case the three essential elements to authorize a court of equity, notwithstanding the statute of frauds (Vernon's Ann.Civ.St. art. 3995) to enforce a verbal sale of land, namely: (1) Payment of a consideration; (2) possession by the vendee; (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor. The legal effect of which facts is the same as though Mr. Bagley had executed a

written conveyance of the land at the time he delivered possession. Hence Mrs. Wilson has acquired title if she is not defeated therein by the fact that the transaction involved a transfer of the custody of the children. The question, therefore, here presented is: Can the father recover the consideration which he has paid to another for the support, maintenance, care, and rearing of his children by such other person, upon the ground that the agreement or transaction included a transfer of the custody of the children by the father? We think the question must be answered in the negative. It is true that the father has no property interest in his child, and that his contract transferring its permanent custody in consideration for property in return is against public policy and may not be enforced, but the fact that his contract may include a transfer of the custody of his children is not for that reason alone rendered unlawful, in the sense that our courts are powerless to enforce it in proper cases. Legate v. Legate, 87 Tex. 248, 28 S.W. 281; Davis v. Sears (Tex.Com.App.) 35 S.W.(2d) 99; Duckworth v. Thompson (Tex.Com.App.) 37 S.W.(2d) 731; French v. Hux (Tex. Civ.App.) 54 S.W.(2d) 539; Dunn v. Jackson (Tex.Com.App) 231 S.W. 351. It is a fundamental principle underlying all the decisions of our courts, that the legal and moral duty of the father to support and rear his children is a continuing, primary obligation. See Gulley v. Gulley, 111 Tex. 233, 231 S.W. 97, 15 A.L.R. 564, and authorities there cited. We do not find any decision of our courts which, for the reason here contended, has given any assistance to the father in evading liability on that obligation. The fact that under the agreement, by which he has shifted that burden to some other person, included a transfer of the custody of his children furnishes no legal avenue of escape. On the other hand, our Supreme Court has enforced such liability, on a quantum meruit, even though the facts included an agreement of the father to permanently transfer the custody of the child. Taylor v. Deseve, 81 Tex. 246, 16 S.W. 1008. In that case Mr. Taylor, as surviving parent, gave his child to Mr. Deseve and his wife for adoption by them "as their own." It was not intended by the parties that any charge should ever be made by the Deseves for the care and maintenance of the child. Subsequently, and against the will of Mr. and Mrs. Deseve, the child was taken away from them by Mr. Taylor. Suit was filed and judgment recovered by Deseve against Taylor, on account, for the care and maintenance of the child during the time it remained with them. The judgment of the lower court was affirmed. If the father's liability to another person for the care and maintenance of his child may be enforced, on quantum meruit, even though the facts upon which the suit is based include an agreement to permanently transfer the custody of his child, then it is but reasonable to say that there is no public policy, or other impediment, preventing him from being held liable for the consideration which he has voluntarily agreed to pay, or that would prevent such other person from acquiring title to the property which the father has delivered in payment, for services rendered in caring for, maintaining, and rearing his children, notwithstanding the fact that the transaction necessarily involved a transfer of their custody. No rule of public policy was violated by Mr. Bagley in procuring for his children that which he could not in his circumstances give, and which they most vitally needed—personal care and attention. He did what appears to have been to the best interest of his children, and is to be commended for that, but the law will not release him from his obligation simply because the circumstances included a transfer of the custody of his children.

The judgment of the trial court is affirmed.