EX PARTE DUDLEY WARNER GOLDSMITH

No. A-5407. Decided May 16, 1956.
Rehearing overruled June 13, 1956.
(290 S.W. 2d Series 502)

*Pierce E. Holmes*, of Houston, for relator.

*Hay, Kirk & Baggett*, and *Charles C. Baggett*, of Houston, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a habeas corpus proceeding which arose in the following manner: On April 6, 1946, Mrs. Pearl Goldsmith obtained a decree of divorce from Relator Dudley Warner Goldsmith in Cause No. 327,670 in the 61st District Court, Harris County, Texas. This decree gave custody of the three children of the couple to Mrs. Goldsmith and directed relator to pay $40.00 each month toward the support of two minor children born to the couple, but making no requirement as to monthly payment for support of a child adopted by the couple during the existence of the marriage relationship. The decree states other provisions had been made for support of the adopted child. Relator faithfully complied with this decree.

In may, 1954, Mrs. Goldsmith filed a new suit numbered 436,181 in the 133rd District Court of Harris County, Texas, alleging the decree for child support theretofore entered in Cause No. 327,670 in the 61st District Court of Harris County, Texas, was inadequate; that conditions had changed and asked that the amount of support for the two natural children be increased to the sum of $45.00 each per month. Relator answered

on June 18, 1954, making a number of defensive pleas, among which was one of res adjudicata and stare decisis by virtue of the judgment in Cause No. 327,670 in the 61st District Court. On June 18, 1954, the judge of the 133rd District Court, sitting in said court, entered an order requiring relator to increase his support contribution to $50.00 per month each for the two natural children only. Relator paid this sum promptly as it accrued.

In February, 1955, Mrs. Goldsmith, in Cause No. 436,181 in the 133rd District Court, again filed her petition asking for support of the adopted child in the sum of $50.00. Mrs. Goldsmith especially plead the divorce judgment and support decree in Cause No. 327,670 in the 61st District Court as the original judgment and support order. Relator answered this petition and raised the question as to the jurisdiction of the 133rd District Court of Harris County, Texas by both special exception and by pleading same as a defense.

On April 12, 1955, by an order filed in the minutes of the 151st District Court, the judge of the 151st District Court of Harris County, Texas, entered judgment that relator be required to pay $50.00 each per month for the support of all three children—this order including the adopted child. On May 26, 1955, Mrs. Goldsmith filed her affidavit and motion asking that relator be held in contempt of the order last above set out. This motion was filed in the 133rd District Court. Relator was duly notified and a hearing had on such motion in the 133rd District Court. The judge of the 133rd District Court, on the 21st day of June, after a hearing, adjudged relator guilty of contempt for failure to comply with the order of April 12, 1955. As a punishment for such failure the judge committed relator to be confined in the county jail of Harris County, Texas, until he purged himself of contempt by paying all arrears under the order of April 12, 1955. Relator applied for and obtained from this Court a writ of habeas corpus enlarging him on bond to await the further orders of this Court.

The relator should be enlarged for the following reason:

■ The original divorce decree and support order having been entered by the 61st District Court, that court only had jurisdiction to amend, modify, or change the support order. No other district court has such power except upon a proceeding originally filed in the 61st District Court and in the original

suit No. 276,760, and by virtue of a valid and legal transfer order. The latest expression of this Court upon this particular point is found in the recent case of Ex Parte Webb, 1954, 153 Texas 234, 266 S.W. 2d 855. The orders entered in this cause by the 133rd and 151st District Courts of Harris County were void and of no force and effect. Ex Parte Taylor, 137 Texas 505, 155 S.W. 2d 358; Ex Parte Roberts, 139 Texas 644, 165 S.W. 2d 83.

Realtor complains of that part of the court's order dated April 12, 1955 which requires that he contribute $50.00 per month to the support of his adopted son, now in the custody of Mrs. Goldsmith. Relator contends that Article 4639a, Vernon's Annotated Civil Statutes of Texas, makes no provision for a court order for support of an adopted child. Prior to the passage by the Legislature in 1935 of Article 4639a, it was the holding of the courts in Texas that a court had no power or jurisdiction to order support for minor children of parents except in a divorce or custody case, and that only during the pendency of such divorce cause. Cunningham v. Cunningham, 120 Texas 491, 40 S.W. 2d 46, 75 A.L.R. 1305; Bowyer v. Bowyer, 130 Texas 257, 109 S.W. 2d 741; Lakey v. McCarroll, 134 Texas 191, 134 S.W. 2d 1016 (6-8). By its passage of Article 4639a, the Legislature gave to the court wherein the divorce suit was pending the power and jurisdiction to make orders for support of minor children until they reached 16 years of age. The 53rd Legislature in 1953 changed the age limit from 16 to 18 years. Article 4639a also gave to the district courts power to punish disobedience of its orders for support by civil contempt action. Prior to the passage of this act, the Courts had no power to punish for contempt in these cases because they had no power to make support orders. Cunningham v. Cunningham, supra; Bowyer v. Bowyer, supra.

Only such support orders as are provided for in Article 4639a may be enforced by contempt proceedings. Article 4639a, in describing the children for whom support orders may be made, provides, in part, that each child " * * * under eighteen (18) years of age *born* of the marriage sought to be dissolved * * * " shall be named in the petition for divorce. It further provides that the court trying the cause "* * * may by judgment, order either parent to make periodical payments for the benefit of *such child or children,* until same have reached the age of eighteen (18) years, or, said court may enter a judgment in a fixed amount for the support of *such child or children * * *."* All through the act, after the provision for naming each child

under 18 years of age, *"born of the marriage sought to be dissolved,"* the Legislature, in speaking of the various provisions for child or children, always uses the words "such child," or "such child or children." (Emphasis added throughout).

Section 9 of Article 46a under the subhead "Status of adopted child," Vernon's Annotated Civil Statutes of Texas, provides when a "minor child is adopted in accordance with the provisions of Article * * * such child shall thereafter be deemed and held to be for *every purpose* the child of its parent or parents by adoption *as fully as though naturally born to them in lawful wedlock*. Said child shall be entitled to proper education, support, maintenance * * * as if said child were their own natural child. * * *" For inheritance purposes, under the laws of descent and distribution, the adopted child is to be regarded as the child of the adoptive parents, and shall inherit from the kin of the adoptive parents "* * * *the same as if such child were the natural legitimate child* of such parent or parents by adoption, * * *" and the adoptive parents and their kin inherit from the adopted child the "* * * same as if such child were the natural legitimate child of such parent or parents by adoption. * * *" It is further provided by this statute that "* * * such adopted child shall be regarded as a child of the parent or parents by adoption for all other purposes as well, except that where a deed, will, or other instrument * * *" clearly intends to exclude such adopted child. Article 46b validates all adoptions theretofore made prior to the passage of the 1953 act. (Emphases added throughout).

The record in this case shows that Albert Dudley Goldsmith, the adopted son of relator and Mrs. Goldsmith, was adopted by the couple a short time prior to their divorce in April, 1946. At that time adoption was controlled by the provisions of Acts. Reg. Sess. 42nd Leg., 1931, p. 302. Section 9 of this Act (carried as Article 46a in the statutes) was construed by this Court in the case of Hoch v. Hoch, 140 Texas 475, 168 S.W. 2d 638. There the controversy arose over the right of the adopted child Frederick Hoch, to nominate his mother to be appointed administratrix of the estate of Fred Hoch, the adoptive father of Frederick Hoch. Henry Hoch, a brother of deceased, Fred Hoch, was claiming prior right of appointment, and Henry had been appointed as administrator in both the probate court and by the district court on appeal. The Court of Civil Appeals had reversed and remanded the case, holding in effect that Mrs. Berry, as nominee of Frederick, had the prior right to be appointed administratrix. This Court reversed the judgment of the

Court of Civil Appeals and affirmed the judgment of the trial court. The basis for such judgment was that Frederich Hoch had been adopted in 1921 and prior to the Act of 1931. The Court said: "There was nothing contained in any of our statutes in force at the time Frederick Hoch was adopted by Fred Hoch which would entitle Frederick Hoch to the preferential statutory right to be appointed administrator of this estate. Such statutes did constitute Frederick Hoch, Fred Hoch's sole heir at law, there being no other child or children, or their descendents. Also such statutes gave Fred and Lillian Hoch (now Mrs. Berry) the right to care and custody of Frederich Hoch, and his estate, and charged them with his maintenance and support." 1st. col., p. 640, 1st, para.

In discussing the 1931 Act, Section 9, providing that the adopted child, Frederich Hoch, was constituted, *for all lawful purposes,* the son and heir of Fred Hoch, just as though he had been born to Fred Hoch in lawful wedlock, we said:

"* * * We are satisfied that had Frederick Hoch been adopted by Fred Hoch under this statute, its provisions, as between the adopted son and the adopting father, would, in law, have constituted such adopted son the son of the adopting father, just as thought the adopted son had been born in lawful wedlock the natural son of the adopting father. This is the very plain intention of the statute under consideration. It intends, as to the children adopted under it, *and as between adopting parent and the adopted child,* to create a relation in law and in fact the same as exists under our laws between natural parent and the natural child. * * * "

In discussing the quoted portion of the opinion in the Hoch case, the Court of Civil Appeals at San Antonio in the case of Spaulding v. Melch, 1945, 189 S.W. 2d 639, wr. ref., said:

"In our opinion, no valid distinction can be drawn between the effect of Article 46a, Section 9, operating in conjunction with Article 3357, Section 5, and the effect of said Article 46a, Section 9, operating in conjunction with Article 8293, which is here involved. If a person adopted in accordance with Article 46a, is to be considered the same as a natural child under Article 3357, then he must also be considered as a natural child under Article 8293."

By our refusal we adopted the above quotation from the Court

of Civil Appeals' opinion. The wording of present Article 46a, Section 9 (Acts 53rd Leg., 1953) that an adopted child is to be deemed and held to be for every purpose the same as natural children of their adoptive parent, is as strong, if not stronger, than the wording of the 1931 Act.

■ We hold, therefore, that such wording applies to Article 4639a so as to give a proper district court the authority to require adoptive parents to contribute to the support of their adopted children, and to punish the failure so to do by contempt proceedings.

In view of our holding on the point discussed in this opinion, it is ordered that relator be discharged from custody.

Opinion delivered May 16, 1956.

MR. JUSTICE GARWOOD joined by JUSTICE BREWSTER dissenting.

I agree with the conclusion that adoptive parents may be compelled by proper contempt proceedings to contribute to the support of their adopted children. It must also be conceded that the authorities cited in the opinion of the Court sustain its action in holding the support order void on other grounds. However, I think those authorities, with the exception of Ex parte Webb, should not be longer followed.

The point at issue is whether District Court A lacks powers to modify a child support order made by District Court B. I submit that in situations like the present, where there are several district courts of the same county operating pursuant to Rule 330, Tex. R. Civ. Proc., they are for all practical purposes one big district court of several judges, and that to require litigants to go through the formality of filing their motions for modification in the same court that made the original order serves only the purpose of confusion.

Especially in the larger cities, the pressure of business is such that the original judge will rarely have any recollection of the parties or of any evidence from the original proceeding which would put him in a better position than one of his colleagues in the same courthouse to pass on the requested modification. Such permanent record of the original hearing as exists will, of course, be equally available to both judges. The pos-

sibility of friction between different judges is obviously quite remote.

Thus the sole basis for the rule of the cited Taylor case is the unrealistic one that the courts in question are as separate as if they were courts of different counties. The rule of the Roberts case, that in the same court in the same county, the court has jurisdiction to modify if the application therefor is styled and numbered as a motion in the original proceeding, but has no jurisdiction if the application is styled and numbered as a new suit, is still more "legalistic."

Certainly no injustice has been done to the relator. He has had all the notice and hearing that due process requires. His main point—that he owes no duty of support to his adopted child—has been decided against him. It cannot be said that the judge who made the original order would probably have decided differently than the judge who made the modification or would have afforded the relator a fairer hearing. I would remand him to the custody of the sheriff.

Opinion delivered May 16, 1956.

Rehearing overruled June 13, 1956.