CHARLOTTE CUTRER, GUARDIAN OF THE ESTATE OF JEFFREY
HERMANN CUTRER, A MINOR, V. JOHN CLARK CUTRER,
JR. AND THE NATIONAL BANK OF COMMERCE OF
SAN ANTONIO, TRUSTEE

No. A-7889. Decided April 19, 1961
Rehearing overruled May 10, 1961
(345 S. W. 2d Series 513)

*Lang, Byrd, Cross, Ladon & Oppenheimer* and *Stanley D. Rosenberg,* of San Antonio, for petitioner.

*Stahl & Sohn, Schweppe, Shweppe & Allison and Cox, Patterson & Smith,* all of San Antonio, for respondent.

MR. JUSTICE WALKER delivered the opinion of the Court.

The principal question to be decided in this case is whether Jeffrey Hermann Cutrer; the adopted child of John Clark Cutrer, is one of the "children" or "heirs of the body" of John Clark Cutrer within the meaning of those terms as used in three trust instruments.

Stella Cook, the daughter of F. W. Cook, was first married to John Cutrer. In 1932 she married Dr. Andrew Wessels, but this marriage terminated in 1950 and she is now the wife of Dr. Ferdinand Herff. Two children were born to her first marriage: John Clark Cutrer, who was born December 18, 1921, and Stella Cutrer, who is now the wife of John Edward Meyer.

John Clark Cutrer married Barbara Lucille Steussy on June 10, 1945, and they had one child, John C. Cutrer. Jr., who was born May 24, 1947. They were divorced in 1949, and John Clark Cutrer married Charlotte Wessels about five years later. The latter, who is not related to Dr. Andrew Wessels, had one child born of a former marriage. That child, Jeffrey Hermann Wessels, was born on November 1, 1945, and was adopted by John Clark Cutrer on May 24, 1955.

### The Three Trusts

*Trust No.* 53: This trust, which was created by Stella Cook Wessels on December 29, 1937, is governed by an instrument executed by the settlor on that date. Under its terms she deposited $5,000.00 with the National Bank of Commerce as trustee and directed that the income be accumulated and added to the principal until John Clark Cutrer reached the age of twenty-five. It was stipulated that all income thereafter accruing should be paid to John Clark Cutrer in monthly installments, and that "such monthy payments shall continue until the death of my son, John Clark Cutrer, at which time this Trust shall terminate and shall descend to his child or children, share and share alike; but should the said John Clark Cutrer die leaving no children, then this trust estate shall pass to and vest in his sister, Stella Cook Cutrer, or her surviving child or children; and in the event the said Stella Cook Cutrer predeceases her brother and leaves no issue, then this trust estate shall be paid over to some Episcopal Church of the City of San Antonio in Bexar County, Texas, to be selected by the Trustee herein." The trust was expressly made irrevocable.

*Trust No.* 79: This trust was created by Dr. Andrew B. Wessels on May 6, 1941, and the trust instrument is identical in all respects with the one covering Trust No. 53 except that $6,000.00 was deposited by the settlor with the National Bank of Commerce as trustee.

*Trust No.* 173: In 1923 F. W. Cook placed $10,000.00 with the San Antonio Loan & Trust Company to be administered as a trust. On September 23, 1946, John Clark Cutrer and Mrs. Stella Meyer, who were the beneficial owners of the trust estate, joined by Mrs. Stella C. Wessels, Andrew B. Wessels and John Edward Meyer, executed an instrument stipulating that "Date of Final Disbursement" means January 1, 1960, and providing that the trust property would be delivered by the trustee to the beneficiaries entitled thereto on that date. Paragraphs 11 and 12 of this instrument are as follows:

"11th: The equitable owners of said Trust Estate are as follows: one-half thereof belongs to John Cutrer, and the remaining one-half thereof belongs to Stella Cutrer Meyer. Should John Cutrer die before the 'Date of Final Disbursement,' his portion of the Trust Estate remaining undistributed shall thereafter belong to the heirs of his body, and snould he not be survived by any heirs of his body, then his

portion shall belong to Stella Cutrer Meyer. Should Stella Cutrer Meyer die before the 'Date of Final Disbursement,' her portion of the Trust Estate remaining undistributed shall thereafter belong to the heirs of her body, and should she not be survived by any heirs of her body, then her portion shall belong to John Cutrer.

"12th: Should both John C u t r e r and Stella Cutrer Meyer die before the disbursement of the Trust Estate, and should neither be survived by the heirs of the body of either of them, then the equitable owners of the Trust Estate shall be Stella Cook Wessels, and should she not be living, then the equitable owners of the Trust Estate shall be the heirs of F. W. Cook."

The National Bank of Commerce was later substituted for the San Antonio Loan & Trust Company as trustee of Trust No. 173. John Clark Cutrer died on May 7, 1958. Several months after his death the present suit was instituted by Charlotte Cutrer, guardian of Jeffrey Hermann Cutrer, petitioner, against John C. Cutrer, Jr., respondent, and the National Bank of Commerce, trustee, to establish a claim to an undivided one-half interest in Trusts Nos. 53 and 79, and an undivided one-fourth interest in Trust No. 173. The trustee answered with a bill of interpleader and tendered the trust assets to the court. After a trial by the court without a jury, judgment was entered denying petitioner's claims, and the Court of Civil Appeals affirmed. 334 S.W. 2d 599. We affirm the judgment of the Court of Civil Appeals.

■ In jurisdictions where the adoption statutes do not require a different approach, it is generally held that an adopted child is not entitled to property conveyed or devised to the "children" of the adoptive parent unless a contrary intent is disclosed by additional language or circumstances. See Huxley v. Security Trust Co., 27 Del. Ch. 206, 33 A. 2d 679; Peck v. Green, 266 Ala. 321, 96 So. 2d 169; In re Chapple's Estate, 338 Mich. 246, 61 N. W. 2d 37; Restatement of the Law of Property § 287; 43 Mich. L. Rev. 705, 901. This rule has always prevailed in Texas, at least with respect to instruments which became effective before the 1931 adoption statute was enacted. Murphy v. Slaton, 154 Tex. 35, 273 S.W. 2d 588; Cochran v. Cochran, 43 Tex. Civ. App. 259, 95 S.W. 731 (no writ). According to the authors of the Restatement, the rationale of the presumption is that "historically, the word 'children' did not include anyone except

issue of the body of the designated parent. No legal method for adoption of children existed. Consequently the question as to whether the term 'children' should be construed to include adopted children could not be raised. This historically derived restriction upon the inclusiveness of the term continues, except when a 'contrary intent of the conveyor is found from additional language or circumstances.' This continuance finds justification in the obvious fact that the conveyor normally does not desire the designated parent to have power, by adopting any person he may choose, in effect to appoint the subject matter of the conveyance to such person."

Petitioner does not question the Murphy and Cochran decisions. She points out, however, that the courts were there construing instruments in the light of the 1850 adoption statute, which did nothing more than make an adopted child the legal heir of the adopter. See Article 43, Tex. Rev. Civ. Stat. 1925; Gammel's Laws of Texas, Vol. 3, p. 474; Eckford v. Knox, 67 Tex. 200, 2 S.W. 372; Harle v. Harle, 109 Tex. 214, 204 S.W. 317, 15 A.L.R. 1261; Taylor v. Deseve, 81 Tex. 246, 16 S.W. 1008; State ex rel Walton v. Yturria, 109 Tex. 220, 204 S.W. 315, L.R.A. 1918F 1079. The 1931 statute provided, among other things, that a child adopted in accordance with its provisions should "thereafter be deemed and held to be, for every purpose, the child of its parent or parents by adoption as fully as though born to them in lawful wedlock." Acts 1931, 42nd Leg., p. 300, ch. 177, § 9. Since the trust instruments in the present case were executed while this statute was in effect, petitioner argues that Jeffrey is to be regarded for all purposes as the natural son of John Clark Cutrer and is therefore included within the classes identified as "children" and "heirs of his body." We do not agree.

■ The 1931 statute did not have the sweeping effect suggested by the language quoted above. Its caption failed to indicate that an adopted child was to inherit from a natural child of the adopter or be given the status of a natural child for all purposes. The provision in Section 9 for inheritance by natural and adopted children from and through each other was accordingly held to be in contravention of Article III, Section 35, of the Texas Constitution. Eck v. Eck, Tex. Civ. App., 145 S.W. 2d 231 (wr. dis. judg. cor.). That decision was expressly approved in Hoch v. Hoch, 140 Tex. 475, 168 S.W. 2d 638, where we stated with some emphasis that the legal relationship established by the 1931 Act was effective only *"as between the*

*adopting parent and the adopted child."* It was pointed out that the statute did not intend or purport to go any further except in providing for inheritance by natural and adopted children from each other, and that the latter provision was unconstitutional.

Where the adopting parent or his estate was concerned, a child adopted under the provisions of the statute had all of the rights of a natural child. The adoptive father could be required by the district court to support such child in accordance with the provisions of Article 4639a.[1] Ex Parte Goldsmith, 155 Tex. 605, 290 S.W. 2d 502.

A child adopted after the execution of the adopter's will was held to be a pretermitted child and entitled to inherit under the terms of Articles 8292 and 8293, Tex. Rev. Civ. Stat. 1925.* Spaulding v. Melch, Tex. Civ. App., 189 S.W. 2d 639 (wr. ref.) ; Bell v. Bell, Tex. Civ. App., 180 S.W. 2d 466 (wr. ref. n.r.e.). The opinion in the Hoch case made it quite clear, however, that as to all persons other than the adoptive parents, an adopted child's status was the same as it would have been if no act of adoption had occurred.

■ There is no basis then for saying that the status conferred by the 1931 Act requires that an adopted child be regarded as a natural child of the adopter for the purpose of construing instruments executed by third persons. It does not affirmatively appear that either the scrivener or any of the parties was familiar with the terms of the statute as written, but the trust instruments undoubtedly were prepared by a competent legal draftsman. If the statute is to be given any weight on the theory of presumed knowledge of the law, however, it must be assumed that the parties knew of its limited application and were also familiar with the decided cases. When the trust instruments were executed, it had been held in this state that "an adopted heir is not in fact the child of the person adopting him, and a devise to the child or children of a named person could not be construed to be a devise to the adopted heir of such person." Cochran v. Cochran, supra. This Court had also said that "the ordinary signification of child is a male or female descendant in the first degree." Harle v. Harle, supra. When the entire le-

---

[1]Except as otherwise indicated all statutes are referred to by the article number under which they appear in Vernon's Annotated Texas Civil Statutes.

*[Now V. A. T. S. Probate Code § 67].

gal setting is considered, we think the general rule of construction mentioned above must be applied to instruments executed while the 1931 statute was in effect.

The instruments themselves contain rather convincing evidence that the parties did not intend to include an adopted child of John Clark Cutrer in the class designated as his child or children. Trusts Nos. 53 and 79 provide that if he should die leaving no children, the trust estate shall pass to and vest in Stella Cook Cutrer or her surviving child or children. It is then stipulated that "in the event the said Stella Cook Cutrer predeceases her brother and leaves no *issue*," the trust shall be paid over to a church selected by the trustee. The words "children" and "issue" were thus used interchangeably by the settlors, and the latter term clearly connotes blood relationship. See In re Howlett's Estate, 366 Pa. 293, 77 A. 2d 390; Rodger v. Miller, 43 Ohio App. 198, 182 N.E. 654; Everett v. Dockery, 203 Miss. 125, 33 So. 2d 313, 832.

Where the children of the conveyor, settlor, or testator are designated as the class to whom the property will pass, there is authority for presuming an intention to include within the designation any person theretofore or thereafter adopted. See Restatement of the Law of Property §287 and Comment *e* thereunder. The words "child" or "children" do not appear, however, in the 1946 instrument governing Trust No. 173. Instead the parties declared that in the event John Clark Cutrer died before the date of final disbursement, his share of the trust estate would belong to the "heirs of his body." Here the intention to exclude adopted children is quite plain, because the quoted expression ordinarily embraces only lineal blood descendants of the designated person. See Restatement of the Law of Property § 306 and Comment *g* thereunder.

The 1931 statute did not make adopted chidren heirs of the body or issue of the adopter, and we do not find anything in the instruments indicating an intention to include a child adopted by John Clark Cutrer. Petitioner directs our attention to the provision that the property shall "descend" to the child or children of John Clark Cutrer at his death, and the reference by Dr. Wessels in Trust No. 79 to John Clark Cutrer as "my son." The parties did not expect the property to pass by descent from John Clark Cutrer to his children, and we think it is clear that the word "descend" was used in the same sense as "pass to and vest" and "paid over" appearing later in the same

sentence. It does not evidence an intention that the property should belong to the persons who might constitute the legal heirs of John Clark Cutrer at his death. The trust instrument executed by Dr. Wessels apparently was copied from the one prepared for his wife, and this may well account for the use of the expression "my son." However that may be, John Clark Cutrer was never adopted by Dr. Wessels, and the fact that the settlor referred to his stepson as a son does not indicate that he intended for children adopted by the latter to share in the trust estate.

There is nothing in the surrounding circumstances to justify an inference that adopted children were intended to be included within the designated classes. John Clark Cutrer was sixteen years of age when Trust No. 53 was created in 1937, and twenty years old when Trust No. 79 was created in 1941. He married in 1945, and the instrument which controls the disposition of Trust No. 173 was executed the following year. His first child was born in 1947. The record does not show that either he or his sister was incapable of having children or had contemplated the adoption of a child. It does not appear that the question of adoption ever occurred to any of the parties, or that they or any member of their families had adopted a child prior to the execution of the trust instruments. We agree with the Court of Civil Appeals that the intention of the parties as disclosed by the several instruments considered in the light of the circumstances surrounding their execution was that upon the death of John Clark Cutrer the property or interests held in trust for him should pass to and vest in his natural children.

Petitioner also says that since a contingent remainder is involved, the right of the adopted child should be determined by the 1951 adoption statute which was in effect when the remainder vested at the death of John Clark Cutrer. In support of this contention she cites Breckinridge v. Skillman's Trustee, (Ky. 1960), 330 S.W. 2d 726; Edmands v. Tice, (Ky. 1959), 324 S.W. 2d 491; and Commerce Trust Co. v. Weed, (Mo. Sup. 1958), 318 S.W. 2d 289. The rule laid down in these cases is contrary to one of the conclusions reached in Murphy v. Slaton, supra. B. H. Murphy and wife, Annie E. Murphy, executed a joint and mutual will devising a separate tract of land to each of their eight children for life with remainder to the surviving child or children of the life tenant. B. H. Murphy died in 1928, and his widow executed codicils to her will in 1948 and 1950. The 1950

codicil directed that adopted children of sons and daughters should share in her estate to the same extent as if born to them.

Two of the children of B. H. Murphy each adopted a child after their father's death. Myrtle Slaton, who had adopted John O. Slaton in 1943, died in 1950 before our present adoption statute was enacted. Fairy Olmstead, the adoptive mother of Earl Murphy Olmstead, was a party to the case which we decided in 1954. If petitioner's views as to the meaning and effect of Article 46a in the present situation were sound, the rights of the two adopted grandchildren would not have been the same. Earl Murphy Olmstead would have been entitled to an interest in the land devised to his adoptive mother by the joint and mutual will provided he survived her, but John O. Slaton could not take any part of the property on hand at B. H. Murphy's death because his adoptive mother had died before the adoption statute was amended in 1951. It was held, however, that John O. Slaton was entitled to no part of the property owned at the time of B. H. Murphy's death, that he would share in the Annie E. Murphy individual property under the 1948 codicil in accordance with the express provisions of the 1950 codicil, and that "the same rule of law will apply to any other adopted children of the Murphy 'child or children or descendants of any child or children'."

■ Entirely aside from the Murphy case, it is our opinion that the rule petitioner seeks to invoke is unsound in principle except where there is something to show that the settlor intended for the members of the class to be determined by the law in effect at the death of the life tenant. We are not concerned here with the right of Jeffrey Hermann Cutrer to inherit from his adoptive father. Whether he is entitled to an interest in the trust estates depends upon the intention of the settlors, and their intention as it existed at the time the trusts were created is determinative. See Vaughn v. Vaughn, 161 Texas 104, 337 S.W. 2d 793; William Buchanan Foundation v. Shepperd, Tex. Civ. App., 283 S.W. 2d 325 (reversed and remanded by agreement, 155 Tex. 406, 289 S.W. 2d 553); 90 C. J. S. Trusts § 169b, p. 43; 1 Am. Jur. Adoption of Children § 64, p. 664. It would be quite strange to ascertain that intention by looking to the provisions of statutes enacted after the trust instruments became effective or considering changes in public policy as reflected thereby.

■ Petitioner further contends that the trial court erred in ex-

cluding certain testimony which she offered. Part of the proffered testimony tends to show that John Clark Cutrer felt closer to Jeffrey than to the child born of his first marriage and wanted the former to share in his estate. Evidence of this type is of no assistance in determining the adoptive father's intention before either child was born or adopted, and petitioner was not prejudiced by its exclusion.

■ If permitted to do so, Mrs. Herff would have testified that in using the terms "child or children" and "heirs of his body" she intended to include any child natural or adopted, and that Dr. Wessels stated to her that such was his intention with respect to Trust No. 79. Petitioner insists that this testimony is admissible because the trust instruments are ambiguous. Where as here the court is concerned with the construction of a written instrument and the right to reformation, rescission or other equitable relief is not in issue, the intention of the parties must be determined from the language of the instrument and the circumstances surrounding its execution. Utterances of the parties tending to show their association of words and external objects may be considered as part of the surrounding circumstances, but statements of subjective intent or will dealing with the subject of the specific document are ordinarily not admissible. The reason for this rule of exclusion is that "when a transaction has been voluntarily embodied in single document, no other expression of intent or will on the same subject can be given jural effect." Even Professor Wigmore recognizes only three narrow exceptions to the general rule of exclusion, and this case does not fall within any of the exceptions. See Wigmore on Evidence, 3rd ed. 1940. Vol. IX, p. 229. § 2471 et seq. In our opinion the trial court did not err in refusing to consider testimony and declarations as to what Mrs. Herff and Dr. Wessels had in mind when the trusts were created.

The judgment of the Court of Civil Appeals is affirmed.

ASSOCIATE JUSTICE STEAKLEY not sitting.

MR. JUSTICE GRIFFIN, joined by JUSTICE HAMILTON, dissenting.

I am unable to agree with the holding that Jeffrey Hermann Wessels is not entitled to any part of the three trust estates.

As I see it, the provision for vesting of the trust on the death of John Clark Cutrer leaves a contingent remainder "to

John Clark Cutrer's child or children, share and share alike."
Guilliams v. Koonsman, 154 Tex. 401, 279 S.W. 2d 579, 583,
57 A.L.R. 2d 97. This is a vesting of the trust property in exist-
ence at the time of the death of John Clark Cutrer in a certain
class of people, to wit: "child or children" in existence at the
time of his death. The members composing that class are to
be determined as of the date of the death of the said John Clark
Cutrer. Breckinridge v. Skillman's Trustee, 330 S.W. 2d 726
(Ct. App., Ky., 1959) Edmands v. Tice, 324 S.W. 2d 491 (Ct.
App. Ky., 1959) ; Commerce Trust Company v. Weed, 318 S.W.
2d 289 (Sup. Ct. Mo., 1958). Prior to his death none of that
class had any right to possession or enjoyment of the trust
property. At the time the three trusts were created, John Clark
Cutrer had no children. If it is construed that those who take
were determined as of the date of the execution of the trust
then no child or children of John Clark Cutrer could take for
the reason that he had no children on such date.

I think that the same law is applicable to these trusts as
would be applicable to a will containing the same language. In 44
Tex. Jur. 796, § 228, it is stated that a gift to "heirs" of A should
be "taken primarily to mean that the takers are those who
correspond with the descriptive term at the time of A's death."
See authorities cited in support of this proposition.

I think that the words "heirs of the body," as used in the in-
strument modifying Trust No. 173 on September 23, 1946, and
referring to the heirs of the body of John Clark Cutrer should
be construed to mean child or children. Federal Land Bank of
Houston v. Little, 130 Texas 173, 107 S.W. 2d 874, and authori-
ties therein cited.

John Clark Cutrer died after the 1951 amendment (46a,
§ 9, V.A.T.C.S.) to the adoption statute. In my opinion, there
is no doubt that the 1951 amendment includes Jeffrey Her-
mann Wessels as a child and he should therefore take his share.

A study of the legislative history of adoption statutes will
show that the Legislature has consistently sought to make the
adopted child, or children, occupy exactly the same position in
the family as the child, or children, actually born to the adop-
tive parents, and that the language of the 1951 Act makes no
distinction between the adopted child and the natural child.

I would reverse the judgments of both courts below and ren-
der judgment allowing Jeffrey Hermann Cutrer to take as a child
of John Clark Cutrer.