Marie BJORGO, Petitioner,

v.

Donald BJORGO, Respondent.

No. A–10906.

Supreme Court of Texas.

April 13, 1966.

Rehearing Denied May 18, 1966.

**144**

Dee D. Miller, Dist. Atty., Amarillo, B. G. Compton, Asst. Dist. Atty., for petitioner.

Wayne B. Barfield, Amarillo, for respondent.

CALVERT, Chief Justice.

In a proceeding by Marie Bjorgo against Donald Bjorgo under Article 2328b, Vernon's Texas Civil Statutes, the Texas version of The Uniform Reciprocal Enforcement of Support Act, the trial court denied a motion by the defendant for summary judgment, granted a motion by the plaintiff for summary judgment, and rendered judgment ordering the defendant to pay $10.00 weekly for the support of his illegitimate child in Kentucky. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause to that court for further proceedings in accordance with its opinion. The tenor of the opinion is that the motion of the plaintiff for summary judgment should have been denied, and that the defendant's motion for summary judgment should have been granted and judgment rendered that the plaintiff take nothing by her suit. 391 S.W.2d 528. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The admitted or uncontroverted facts established by the summary judgment proofs will be stated. On May 26, 1954, the Jefferson County Court, Juvenile Division, of the Commonwealth of Kentucky, entered a judgment in the case of Marie Bjorgo v. Don Bjorgo which recited that the defendant was accused by Marie Bjorgo by affidavit and by warrant sworn to on March 24 as being the father of Shirley Marie Bjorgo, and continued: "It is therefore considered, ordered and adjudged that the defendant, Don Bjorgo, pay to the complainant the some [sic] of $520.00 per year for 16 years in weekly installments of $10.00 each for the benefit of said child. * * *" The parties agree that Kentucky has a statute, known as the Bastardy Act, which authorized the judgment.

This proceeding was begun in Kentucky as the initiating state under that State's Uniform Support of Dependent's Act and was transmitted to Texas as the responding State. Regularity of the proceedings under the Kentucky and Texas Support Act statutes is not questioned.

The summary judgment entered by the trial court did not award the plaintiff a recovery of the accrued weekly payments

which were delinquent under the Kentucky judgment. Instead, it ordered the defendant to make future weekly payments. In reversing the trial court's judgment, the Court of Civil Appeals at Amarillo, with the Chief Justice dissenting, held that (1) the law of Texas, the responding state, not that of Kentucky, the initiating state, governs in deciding whether the defendant has a duty to support his illegitimate child; (2) the judgment of the Kentucky court is not entitled to full faith and credit in the courts of this State under Article IV of the Constitution of the United States; and (3) enforcement of the Kentucky judgment would deny to the defendant equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. We are satisfied that the reasons thus given for reversing the trial court's judgment are unsound.

In support of its holding that the duty of the defendant to support his child is determinable by the law of Texas and not by the law of Kentucky, the Court of Civil Appeals cited Freeland v. Freeland, Tex. Civ.App., 313 S.W.2d 943 (1958), no writ history, and several decisions, to be noticed later, by the courts of New Jersey, Maine, Nevada, the District of Columbia and Florida.

Freeland v. Freeland is not in point on the facts. It involved an indirect effort through use of the Indiana Reciprocal Support of Dependents Law to obtain a judgment in a district court of Dallas County, Texas, altering and enforcing a child support judgment of a district court of Tarrant County, Texas. The Court of Civil Appeals in that case held that under our decision in Ex parte Goldsmith, 155 Tex. 605, 290 S.W. 2d 502 (1956), the only Texas court having jurisdiction to alter or modify the judgment was the court which entered it, and that under our holding in Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119 (1957), the original support order of the Tarrant County district court could only be enforced by contempt proceedings. The holding thus was

that jurisdiction of one Texas court to alter and enforce a child support order of another Texas court is governed by the law of Texas, and that jurisdiction as fixed by Texas law cannot be changed by initiating a proceeding in another state under a Uniform Support of Dependents Law. That is not the problem before us in this case.

The cases cited from other jurisdictions either do not support the holding that the defendant's duty of support is determinable by the law of the responding state rather than the law of the initiating state or they are distinguishable. The New Jersey court in Pfueller v. Pfueller, 37 N.J.Super. 106, 117 A.2d 30 (1955), the Maine court in Rosenberg v. Rosenberg, 152 Me. 161, 125 A.2d 863 (1956), and Lambrou v. Berna, 154 Me. 352, 148 A.2d 697 (1959), and the Nevada court in State ex rel. Lyon v. Lyon, 75 Nev. 495, 346 P.2d 709 (1959), held nothing more than this: That a mere certificate of a duty of support by a court of an initiating state, based upon an affidavit or sworn pleading of a complainant or upon an ex parte hearing and forwarded to a court of a responding state, all as authorized by the Uniform Support Law, does not establish the duty or the extent thereof; and that it is the obligation of the court of the responding state to determine duty and the extent thereof from evidence adduced in a hearing before it. None of the cases held that in determining duty and extent the court in the responding state must apply that state's substantive law. The Florida Uniform Support Law, unlike the Texas law at the time this proceeding was filed and judgment was entered, has provided since 1952 that an obligor's duty of support is determined by the law of the state in which he is found or in which he was present during the period for which support is sought. The Florida decisions in Jackson v. Hall, 97 So.2d 1 (1957) and Clarke v. Blackburn, Fla.App., 151 So.2d 325 (1963) grew out of proceedings by the states of Illinois and North Carolina, respectively, to extradite Florida residents under the criminal enforcement provisions of

the Uniform Support Laws of those states. The Supreme Court of Florida held, in keeping with its own statutory provision, that whether the persons sought to be extradited owed duties of support, and the extent thereof, could only be determined by the Florida courts according to Florida law. With these Florida decisions before it, the Municipal Court of Appeals for the District of Columbia, in Cobbe v. Cobbe, 163 A.2d 333 (1960), ordered a trial court to certify to a Florida court that it found a support relationship between a Florida resident and his minor daughter in the District of Columbia, leaving determination of actual duty of support and the extent thereof to the Florida court according to the substantive law of that state.

We have analyzed the foregoing cases at some length because the Court of Civil Appeals seemingly regarded them as establishing a uniform holding in all state jurisdictions that in cases of this kind whether there is a duty of support is always to be determined by the substantive law of the responding state. Our analysis discloses that only the Florida court has so held. Unlike the Florida statute, Article 2328b–3 contained the following provision when this case was tried and judgment was entered:

> "Sec. 7. Duties of support enforceable under this law are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought *or where the obligee was present when the failure to support commenced, at the election of the obligee,* but shall not include alimony for a former wife." [1]

The Texas statute thus gave the obligee, Shirley Marie Bjorgo, a "choice of law" to be applied in determining defendant's duty of support, the choice to be exercised by Marie Bjorgo, the plaintiff. See Smith v. Smith, 125 Cal.App.2d 154, 270 P.2d 613, 618 (1954). She chose the law of Kentucky where Shirley Marie was present when the failure to support commenced. This brings us to a consideration of the holding by the Court of Civil Appeals that the Kentucky judgment is not entitled to full faith and credit.

█ The holding of the Court of Civil Appeals that the Kentucky judgment is not entitled to full faith and credit seems to us to be based upon a misconception of the nature of the judgment of the Texas trial court. The trial court's judgment was interpreted as ordering the defendant to make future weekly support payments in compliance with the terms of the Kentucky judgment. Proceeding to apply the law on that premise, and citing Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1909), Gard v. Gard, 150 Tex. 347, 241 S.W.2d 618 (1951), Criteser v. Gaffey, Tex.Com.App., 222 S.W. 193 (1920), and Quinn v. Quinn, Tex.Civ.App., 216 S.W.2d 1001 (1949), writ refused, no reversible error, as authority for the proposition that a judgment ordering support payments which, before they accrue, are subject to change or modification is not a final judgment and is not entitled to full faith and credit, the Court observed that the plaintiff had the burden, which she did not discharge, of pleading and proving that under the law of Kentucky the unaccrued support payments were not subject to change or modification by the Kentucky courts. If we interpreted the trial court's judgment as did the Court of Civil Appeals, we would be compelled to deal with that problem; but we do not so interpret it.

We interpret the trial court's judgment as giving effect to the Kentucky judgment only to the extent that the judgment imposes a duty on the defendant to support his child, and as then fixing, independently of the terms of the Kentucky judgment, the amount of the payments to be made. The record reflects that the parties filed a written agreement in this cause on June 8, 1964, in which they agreed that "assuming there is a duty upon Donald Bjorgo to support Shirley Bjorgo under the laws of the State

---

1. Emphasis ours throughout unless otherwise indicated.

of Texas, which the Defendant denies, said duty shall be in the amount of $520.00 per year, payable in installments of $10.00 per week." The trial court entered its judgment on the same day. In the judgment the court found that based upon Article 2328b and the Kentucky judgment the defendant has "*a legal duty*" to support Shirley Bjorgo, and then made an independent finding "that the defendant is able to pay the sum of $10.00 per week to said Shirley Bjorgo until said Shirley Bjorgo shall have reached the age of eighteen years." The judgment ordered the defendant to pay $10.00 per week to the District Clerk "commencing on June 15, 1964, and payable each Monday thereafter until further order" of the court. If the trial court's judgment is interpreted as giving full faith and credit to and enforcing the Kentucky judgment's provision for future support payments, the agreement of the parties serves no purpose, the finding that the defendant is able to pay until the child reaches the age of eighteen years, instead of sixteen years, is meaningless, and the reservation by the court of the power to change the payments is without authority. It is quite clear that the Kentucky judgment was given full faith and credit only to the extent that it adjudicated the defendant to be the father of the child and imposed a duty to support the child. To that extent the judgment is a final judgment and entitled to full faith and credit. See 16 A.L. R.2d 1098, 1100–1101.

■ Since the Kentucky judgment is final and is entitled to full faith and credit in so far as it imposed a duty on defendant to support his child, Sections 13 and 15(b) of Article 2328b–3 authorized the trial court to make an independent adjudication of the amount to be paid and intervals at which payments are to be made. Section 13 reads:

"Sec. 13. If the court of the responding state finds a duty of support, it may order the defendant to furnish support or reimbursement therefor and subject the property of the defendant to such order."

Sec. 15 provides:

"Sec. 15. In addition to the foregoing powers, the court of this State when acting as the responding state has the power to subject the defendant to such terms and conditions as the court may deem proper to assure compliance with its orders and in particular:

"(a) * * *

"(b) To require the defendant to make payments at specified intervals to the district clerk or probation department or the obligee and to report personally to such clerk or probation department, at such times as may be deemed necessary."

■ The defendant was entitled to a hearing in the Texas court on his duty of support and the extent thereof. He received it. The summary judgment proofs established the duty and its extent. The copy of the Kentucky judgment, entered with the defendant personally before the court, established the duty, and the agreement of the parties supports the trial court's order that, subject to further orders of the court, the defendant make weekly support payments of $10.00 each. By recognizing that the trial court made an independent finding and order with respect to the amount of the support payments, we are not to be understood as holding that upon giving full faith and credit to the Kentucky judgment on duty of support, the trial court was without power, after hearing, to enforce the remainder of the judgment. We simply do not reach this question. We call attention, however, to Sec. 2(6) of Art. 2328b–1, which reads:

" 'Duty of support' includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, *whether interlocutory or final* * * *."

■ The holding of the Court of Civil Appeals that to require defendant to support his illegitimate child would deny him equal protection of the laws seems to rest on its further holding that the Ken-

tucky judgment is not entitled to full faith and credit. See 391 S.W.2d 533. If that is the only basis for the holding, we have disposed of it. But the court may not have intended so to limit its holding since in the course of its opinion it quoted certain language concerning equal protection of the laws from this Court's opinion in State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227, 67 A.L.R.2d 758 (1958), and cited Commonwealth of Pennsylvania ex rel. Dept. of Public Assistance v. Mong, 160 Ohio St. 455, 117 N.E.2d 32 (1954).

In *Copus* we were concerned with the extraterritorial effect of a California support statute on a former California resident after he had become a resident of Texas. We specifically noted that the proceeding was not under the Uniform Law. We refused to give effect to the statute, and in the course of discussing the matter made this observation (309 S.W.2d 229):

> "To say that the support statute compelled liability for that period of time after the respondent moved to Texas *would seem* to deny to him equality with other citizens of the state."

In *Mong* the Supreme Court of Ohio rested its decision refusing to give effect to a Pennsylvania support statute on denial of equal protection of the laws. The decision was by a divided court and is analyzed and criticized in the dissenting opinion in *Copus*.

The passing comment in *Copus* was not intended to commit us to a holding that for courts of this State to give effect to support obligations incurred by Texas residents before moving to this State would violate constitutional rights to equal protection of the laws. If the comment carries that implication, it is now disavowed. A state may classify its citizens into reasonable classes and apply different laws, or its laws differently, to the classes without violating the Equal Protection Clause of the Fourteenth Amendment. 16 Am.Jur. 2d 859, Constitutional Law, § 494, et seq.; 12 Tex.Jur.2d 457, Constitutional Law, §

110, et seq. We do not consider unreasonable a classification which puts into one class those citizens of this State whose duties of support are incurred under laws of this State and into another those who have become citizens of this State after incurring obligations of support in another state. For comment on this question, see 13 Stanford Law Review 901, 911–913. It follows that to enforce against a resident of this State an obligation of support incurred in another state before residence here was acquired, which obligation cannot, under our law, be imposed upon a Texas resident who has not incurred the obligation elsewhere, is not a denial of equal protection of the laws.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.