Leo DAVIS, Executor and Trustee, et al.,
Appellants,

v.

Nelwyn B. WALDRON, et al., Appellees.

No. 7201.

Court of Civil Appeals of Texas,
Beaumont.

Jan. 21, 1971.

Ray Ball, Lubbock, for appellants.

Herman W. Mead, Houston, for appellees.

PARKER, Chief Justice.

Suit was brought by and on behalf of George Leslie Waldron, a minor, to construe the will of Terry Waldron, Sr., who died on December 19, 1967. The minor plaintiff is the adopted son of Terry Waldron, Jr., a son of the Testator, who died January 7, 1969. The defendants were the Executor and Trustee under the will and the Administratrix of the Estate of Junior Waldron, who had been married twice. To the first marriage were born two children, Dannette G. Waldron and Terry Freddie Waldron, both of whom are adults. The minor plaintiff was the natural son of Junior's second wife, and had been adopted by Junior Waldron in 1960, during the existence of his second marriage.

The will, after making several specific bequests, contained a residuary clause creating a trust for the benefit of Testator's two children, which provided for the distribution of the corpus thereof in this language:

"On January 1, 1970, the total residue of my estate existing on that date, including principal and accumulated dividends, interest and all other income, is to be paid and delivered in fee simple by the executor-trustee one-half to my son, Terry Waldron, Jr., (or per stirpes to his bodily heirs should he have predeceased me) and one-half to my daughter, Omega Waldron Essary, (or per stirpes to her bodily heirs should she have predeceased me)."

Both parties moved for summary judgment, and that of the minor plaintiff was granted. There are no disputed facts and there is no claim of ambiguity in the will.

We note in our consideration of the will that Testator used the same phrase "bodily heirs" twelve other times in speaking of the persons who would take in the event his children either predeceased him or died before the expiration of the trust.

The narrow question presented is whether the adopted child will share with the two natural children of Junior Waldron the portion of Testator's property which would have gone to Junior Waldron had he not died before the termination of the trust.

In the recent case of Vaughn v. Gunter, 458 S.W.2d 523, 527 (Tex.Civ.App.—Dallas, 1970), Justice Bateman had under consideration the 1951 amendment to the Adoption Statute (Article 46a, § 9, Vernon's Ann.Civ.St.). The Supreme Court entered a per curiam order approving the construction placed thereon by Justice Bateman, saying:

"We approve the holding of the court of civil appeals that under the 1951 amendment of Section 9 of Article 46a, Vernon's Ann.Tex.Civ.St., in the absence of words indicating a contrary intention the unqualified words 'children' and 'child' include an adopted child." [461 S.W.2d 599 (Tex., 1970).]

We note particularly that there was no modification of the word "children" appearing in the instrument being construed in *Vaughn* and, under the plain language of the adoption statute, the adopted child was included within such term.

■ We turn, therefore, to a consideration of whether the words "bodily heirs", used by the Testator in our case, are such as indicate "contrary intention" or serve to exclude the adopted child. In construing the terms of the will, we seek to determine the intent of the Testator and may consider the provisions of the will as a whole and the surrounding circumstances,

rather than a particular or isolated provision. Haile v. Holtzclaw, 414 S.W.2d 916, 922 (Tex.Sup., 1967); Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 57 A.L.R.2d 97 (1955).

In Cutrer v. Cutrer, 162 Tex. 166, 345 S. W.2d 513, 517 (1961), the court was construing an inter vivos trust but it was the 1931 adoption act which was involved. Nevertheless, Justice Walker referred to the fact that under the language used in Restatement of the Law of Property, § 287, Comment e, the designation of children of the conveyor, settlor, or Testator presumptively meant the inclusion in such class of persons theretofore or thereafter adopted. Such a holding is now clearly the law in Texas under the recent opinion in Vaughn v. Gunter, supra.

Nevertheless, in *Cutrer*, supra, Justice Walker pointed out that the parties declared that the share would belong to the "heirs of his body", and continued:

"Here the intention to exclude adopted children is quite plain, because the quoted expression ordinarily embraces only lineal blood descendants of the designated person. See Restatement of the Law of Property, § 306 and Comment g thereunder." (345 S.W.2d at p. 517.)

The same authority (Restatement of the Law of Property, § 306, Comment *b*) reads:

"The words 'heirs of the body' are the words most frequently employed to describe the lineal descendants of a designated ancestor who succeed to his interest in his property on his death intestate. Other words, however, may be used with the same meaning and, when they are so used, they are 'words of sim-ilar import.' *Thus the words 'bodily heirs' * * * are, unless a contrary intent of the conveyor is found from additional language or circumstances, construed to refer to the same persons as are described by the words 'heirs of the body.'"* (Emphasis supplied.)

In his disposition of certain land located in the State of Arkansas, not involved as a part of the residuary estate in this suit, Testator specifically excluded an adopted child of one of his own children, the provision being quoted in the margin.* We note, particularly, that no mention was made as to the date of the death of Testator, whether or not his child predeceased him, or any particular date, e. g., January 1, 1970.

An entirely different situation prevails when he come to consider the Testator's disposition of his residuary estate. *This disposition was made to depend upon the date of his death.* If he died before January 1, 1970, the residue of his estate was placed in trust for the period of time intervening between his death and January 1, 1970. If he was living on January 1, 1970, the trust provision was inoperative.

But, in each instance, the same provision was made for the ultimate disposition of the residuary estate: If Testator's son or daughter (or either of them) predeceased Testator, the bodily heirs of such deceased son or daughter would take such child's share per stirpes. Our minor plaintiff, not being a bodily heir of his adoptive father (son of Testator) would not be included in those entitled to take under the terms of the testamentary trust. From our review of the will as a whole, we find nothing which conflicts with this holding.

---

* "To my son, Terry Waldron, Jr., and to my daughter, Omega Waldron Essary, for their lifetimes, I give, one-half to each, all the income from said land. Upon the death of only my son or only my daughter, his or her respective bodily heirs shall receive (per stirpes) the half of the income the parent was receiving until the death of my other child. When both my son and my daughter have died, I give and devise to their respective bodily heirs the fee title to an undivided half interest each in said land; that is, an undivided half interest in the fee title to the bodily heirs of my son, and an undivided half interest in the fee title to the bodily heirs of my daughter."

■ Neither of the Testator's children predeceased him and he did not live until January 1, 1970, and the trust came into existence with two living beneficiaries, Testator's son and daughter. Upon January 1, 1970, when the trust terminated, Testator's son was dead. Junior Waldron died intestate and left heirs of his body (his natural children) and heirs (his natural and adopted children). Under the rationale of Vaughn v. Gunter, supra, and our analysis of the cases on the subject, the minor plaintiff was an "heir" of his adoptive father and entitled to inherit. Power v. Landram, Tex., 464 S.W.2d 99 (1970).

■ We bear in mind that it is the duty of the court, in construing a will to seek and enforce the intention of the Testator; and, if the intention is not clearly expressed by the particular language used, it may be found by looking to the provisions of the will as a whole and to the circumstances surrounding its execution. Guilliams v. Koonsman, supra; Haile v. Holtzclaw, supra. But, we are also admonished by the court in Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885, 888 (1960): "The intent must be drawn from the will, not the will from the intent."

Justice Greenhill in *Huffman*, supra, quoted at length from Page on Wills (Lifetime Ed.), § 1617, p. 622, et seq., concluding:

" 'Assuming that there is a valid will to be construed, it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions.' "

Testator could have included in the clause creating the trust a provision limiting the remaindermen to the bodily heirs of his son or daughter in the event either died during the existence of the trust. No such clause was included and we are not authorized now to insert one into the instrument which would prevent the adopted child from receiving the share of the remainder which would have passed to Junior Waldron had he lived until January 1, 1970. The minor plaintiff being an "heir" of Junior Waldron, the judgment of the trial court awarding him his share of the trust estate was proper and is in all things affirmed.