Catherine Ann WESTPHAL, Appellant,

v.

Charles Lee PALMER, Appellee.

No. 613.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 26, 1972.

Carol S. Vance, Dist. Atty., R. H. Elder, Asst. Dist. Atty., Houston, for appellant.

Toby C. Bonds, Houston, for appellee.

SAM. D. JOHNSON, Justice.

This is an appeal from an action under the Uniform Reciprocal Enforcement of Support Act, enacted in Texas in 1965. It is cited as Tex.Rev.Civ.Stat.Ann. Art. 2328b–4 (1965).

On March 31, 1961, Catherine Westphal (her name following a subsequent marriage) was divorced from Charles Palmer in the Court of Domestic Relations of Harris County, Texas. Catherine Westphal was awarded the custody of the two minor children born of such marriage to Charles Palmer. Subsequently, Catherine Westphal moved to the state of Wisconsin and there established her residence and that of her children.

On July 14, 1971, Catherine Westphal filed an action in the State of Wisconsin

asserting that she and the minor children were entitled to support from Charles Lee Palmer under the provisions of the Uniform Reciprocal Enforcement of Support Act of the State of Wisconsin. Upon appropriate findings and order of the Wisconsin court the reciprocal action was transmitted to the Harris County District Court and filed on July 20, 1971. The defendant Charles Palmer did not file an answer but appeared with his attorney contesting the jurisdiction of the court. In doing so he contended that there was a prior Harris County divorce and that the plaintiff's remedy would be a contempt action and not a new action. He urged dismissal upon the authority of the case of Freeland v. Freeland, 313 S.W.2d 943 (Tex.Civ.App.—Dallas 1958, no writ). Upon such contention and on such authority the instant cause was dismissed for lack of jurisdiction. It is from such judgment that the instant appeal is perfected.

The case of Freeland v. Freeland, supra, was heard and the opinion rendered prior to the enactment of the 1965 Uniform Reciprocal Enforcement of Support Act (URESA), which will sometimes herein be referred to as the new act. Freeland v. Freeland, supra, was heard under and based upon the Reciprocal Support of Defendants Act of Texas, Tex.Rev.Civ.Stat. Ann. Art. 2328b–1, 2328b–2, 2328b–3, sometimes herein referred to as the old act. In the Freeland case, the parties were divorced in Tarrant County, Texas, and the wife received the care and custody of three minor children. The father was ordered to make weekly child support payments to the Collector of Child Support of Tarrant County, Texas. Thereafter the wife and the minor children moved to the state of Indiana where she established her residence and that of her children. The wife thereafter secured a judgment for child support in an Indiana court which was, under the old act, forwarded to the District Court of Dallas County, Texas, where the husband was then allegedly residing. The trial court overruled the husband's plea of

jurisdiction and plea of res judicata. On appeal the court held that a valid pre-existing support order entered by a Texas district court served to deprive any other Texas district court from acting as a responding state under the then existing old act since an action under that act had the effect of asking another Texas district court to modify, amend or change the earlier order, whereas exclusive jurisdiction for such amendment was in the court which entered the original order. The Freeland case stands for the proposition that, under the old act, the only proper Texas court to enforce a support order issued ancillary to a Texas divorce was the court entering it originally.

It seems apparent that model acts have been designed to encompass the needs of those least able to cope with the exigencies of a highly mobile society. They have been designed to provide an economical and expedient means for enforcing support orders for parties, particularly less affluent parties, who are located in different states and jurisdictions. They have been enacted to alleviate the difficulty in enforcing support orders where the obligor and the obligee are located in states or jurisdictions which are separated from each other by hundreds or even thousands of miles. Despite innumerable obstacles, some of which are creatures of judicial construction, they have attained a substantial nationwide uniformity and acceptance. See the list of over fifty states and jurisdictions which have adopted URESA following Tex. Rev.Civ.Stat.Ann. Art. 2328b–4 (1965).

The Freeland case, decided under the old act, is now viewed as an inhibiting factor in situations like those here presented under the new act. Commenting on its posture after the new act became effective it was said "This position is contrary to the purpose of URESA and should be changed." Note, 44 Tex.L.Rev. 814, 816 (1966). An opinion of the Attorney General of the State of Texas written shortly after the new act became effective to a district attorney charged with certain en-

forcement responsibilities under the new act concluded "There is no reason for a court to wish to engraft such an exception on Article 2328b–4 (the new act) as was engrafted in the case of Freeland v. Freeland on the repealed Articles 2328b–1, 2328b–2, 2328b–3, V.C.S. (the old act)". (Parentheses added). Opinion of the Attorney General, State of Texas No. C–599 (Feb. 7, 1966).

We think it must be remembered, however, that the Freeland case was construing the old act and that it did not contain certain provisions appearing in the new act. There was no provision for intrastate application of the old act and this carries particular significance when viewed from the background of case law at that time.

Prior to the adoption of the old act, Texas courts uniformly held that since a support order was of an interlocutory nature, only the original district court had jurisdiction to amend, change or modify it. Ex Parte Goldsmith, 155 Tex. 605, 290 S. W.2d 502 (1956); Youngblood v. Youngblood, 163 S.W.2d 731 (Tex.Civ.App.—Fort Worth 1942, no writ); Ex Parte Roberts, 139 Tex. 644, 165 S.W.2d 83 (1942). (More recently, Mr. Justice Pope in speaking for our Supreme Court in 1967 stated that "Subsequent motions to change or modify child support orders constitute a continuation of the original cause of action for divorce. . . ." Ex Parte Mullins, 414 S.W.2d 455 (Tex.Sup.Ct.1967). The Mullins case was based solely upon Tex. Rev.Civ.Stat.Ann. Art. 4639a (1953), however, and contains no reference to any attempt at enforcement under the new act.) Our Supreme Court had held that the only remedy for enforcing a child support order was a civil contempt proceeding. Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119 (1957), Guercia v. Guercia, 150 Tex. 418, 241 S.W.2d 297 (1951). The courts of our state had likewise consistently held that a contempt proceeding for the enforcement of a support order was ancillary to the original order and exclusive jurisdiction to enforce it remained with the court that

entered the original order. Ex Parte Gonzalez, 111 Tex. 399, 238 S.W. 635 (1922); Putty v. Faulkner, 214 S.W.2d 831 (Tex. Civ.App.-Texarkana 1948, no writ); Hunt v. Boyd, 193 S.W.2d 970 (Tex.Civ.App.-Austin 1946, no writ); Johns v. Johns, 172 S.W.2d 770 (Tex.Civ.App.-El Paso 1943, no writ).

The new act, the Texas 1965 URESA, contains three new sections of persuasive significance in the instant case which were not contained in the old act. The first, Section 28, provides that support actions may be brought under the act even though there is already pending, in another court, a divorce or separation proceeding which may involve the issue of support. Proceedings in other jurisdictions, even within this state, are therefore contemplated. This section provides:

"Sec. 28. No proceeding under this Act shall be stayed because of the existence of a pending suit for divorce, separation, annulment, dissolution, habeas corpus or custody proceeding."

New Section 29 eliminates an objection like that referred to in the Freeland case where the court conceived that a defendant might be "impaled on the horns of a dilemma" if he complies with the order of one Texas court by making support payments to it rather than to another Texas court. The section, which is undoubtedly applicable to parties located in different judicial district within the state, provides:

"Sec. 29. No order of support issued by a court of this State when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both."

Most importantly, new Section 31 provides for intrastate application of the act. The new act is therefore not only made applicable to parties in different states but also, in like fashion, to parties within this state which are located in different judicial

districts. The old act purported to make no change in the internal state law. This section of the new act provides:

> "Sec. 31. This Act is applicable when both the plaintiff and the defendant are in this State but in different judicial districts. If the court in which this petition is filed finds that the petition sets forth facts from which it may be determined that the defendant owes a duty of support and finds that another court in this State may obtain jurisdiction of the defendant or his property, the clerk of the court shall send three copies of the petition and a certification of the findings to the court of the judicial district in which the defendant or his property is found. The clerk of the court receiving these copies shall notify the prosecuting attorney of their receipt. The prosecuting attorney and the court to which the copies are forwarded shall then have duties corresponding to those imposed upon them when acting for the State as a responding state."

■ The legislative intent of the new act is stated in Part I, Section 1 to ". . . improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." Part I, Sec. 3 of the new act recites that "The remedies herein provided are in addition to and not in substitution for any other remedies" and Part I, Sec. 4 recites that "Duties of support arising under the law of this State, when applicable under Section 7, bind the obligor, present in this State, regardless of the presence or residence of the obligee." Article 2328b–4, Uniform Reciprocal Enforcement of Support Act. It seems obvious that the legislature sought to give the act the widest and most universal application possible, even extending it to apply as between the jurisdictions within this state. An application of the Freeland holding to the new act would curtail its coverage and deprive a plaintiff under the present facts of rights now given to Texas plaintiffs. We cannot believe the legislature so intended. Every indication in the act leads to the conclusion that the legislature sought to include those situated as in the present case. Curative or remedial statutes are generally to be given the most comprehensive construction possible, and certainly should not be given a construction that would defeat the very purpose for which the statute was enacted. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951).

■ The new act was undoubtedly intended to be useful where the defendant moves to a new state, where both parties move to new and different states, where one or both parties move from other states to this state, and where resident Texas parties remain in this state and locate in different jurisdictions. We can not believe that the new act was intended to be applicable in all other circumstances and yet inapplicable only in the instance where a plaintiff moves out of state after receiving a Texas support order ancillary to a Texas divorce. Nothing in the new act suggests such an intent.

Appellant's sole point of error that "The Court erred in dismissing the case for want of jurisdiction" is sustained. The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.